THE PEOPLE OF THE STATE OF NEW YORK ex rel. CYRUS E. DAVIS, Appellant, v. HIRAM GARDNER, Respondent.

The time of the adoption of article 6 of the Constitution, intended by the references thereto in that article, is January 1st, 1870.

A county judge, chosen at the general election in November, 1869, and having taken the oath of office, was "in office at the adoption of this article," and entitled to hold his office for the full term of four years thereafter.

The limitation as to age, expressed in section 13 of that article, applies to county judges, but not to those in office January 1st, 1870, the express language of section 15, that such judges "shall hold their office until the expiration of their respective terms," being controlling.

(Argued June 9th; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme Court in the fourth department, affirming a judgment in favor of the defendant, rendered on a trial by the court, without a jury.

This is an action in the nature of a *quo warranto*, commenced and prosecuted pursuant to sections 428 to 448 of the Code, to oust the defendant from the office of county judge of Niagara county, and to install the relator into the office.

The defendant was appointed, by the governor, county judge of that county, on November 17, 1868, to fill a vacancy

occasioned by the resignation of Judge LAMONT, who was elected in 1865, and whose term would expire December 31, 1869.

The defendant was duly elected to the office at the general election in November, 1869, took the oath of office, and, on January 1st following, entered upon and yet continues in the discharge of the duties thereof. No question is made as to the regularity of the election.

The defendant became seventy years of age on February 9, 1870.

At the general election in November, 1870, the relator received 2,840 votes for that office, being all the votes given therefor but one ; the average number of votes given in the county, for other officers voted for, being 9,122.

*Marshall B. Champlain, Attorney-General,* and the *Relator* in *pro. per.,* for the appellant.

*Mortimer M. Southworth* and *Geo. F. Comstock,* for the respondent.

FOLGER, J. The defendant, at the time of the general election in November, 1869, was holding the office of county judge of Niagara county, by virtue of a valid appointment from the governor. His term of office would expire on the 31st day of December, 1869. At that general election, he was chosen, by the electors of the county, to the same office for the term of four years from the 31st of December, 1869. At the same election at which he was thus chosen, the electors of the State expressed their assent to the judiciary article of the proposed Constitution. That the electors of the State had so expressed their assent, was determined and declared by the board of State canvassers in December, 1869. It is held in *Real* v. *The People* (42 N. Y., 270), that the canvassing of the votes, and the determination and declaration of the result by the board of State canvassers, was the adoption by the people provided for in the fifth section of the

fourteenth article of the instrument proposed to the people as a new Constitution. That section reads as follows: "Sec. 5. This Constitution shall be in force from and including the first day of January, *next after its adoption by the people*, except as herein otherwise provided." And it was held in that case, that the people voting upon the whole instrument, though they assented to but one article of it, must have assented to that, in view of the time for it to go into effect, declared by the fifth section above quoted. And that the judiciary article, therefore, was in force, as a part of the Constitution of the State, on the first day of January, 1870, and not before that. The decision was concurred in by all the judges, but one, who did not sit. There is no reason to doubt its soundness. It must be taken as established, that the new judiciary article took effect upon the 1st day of January, 1870, and on and from that day became operative as a provision of organic law. By the fifteenth section of that article, it is provided as follows: "The *existing* county courts *are continued*, and the *judges thereof*, *in office at the adoption of this article*, shall hold their offices until *the expiration of their respective terms.* Their successors shall be chosen by the electors of the counties for the term of six years."

The question is now presented, to which of the terms of office of the defendant does this provision apply? Shall he hold the office until the expiration of four years from the 31st December, 1869, or shall he be limited to that term of office which expired on that day? The relator claims that the last is the true position. And the argument to maintain it is mainly founded upon the phrase, "at *the adoption* of this article," found in the fifteenth section. But confining our consideration to this one phrase, we can but notice, that there is a distinction indicated in the instrument proposed as a new Constitution, and that there is reason to believe that there are two acts and periods of adoption spoken of by it. In this fifteenth section, and in other sections (§§ 2, art. 2; 4, art. 3; 9, art. 4; 8 art. 5; 7, 12, 13, 24, art. 6; 6, art. 7; 1, art. 11), the phrase is used generally, without qualifying or

explanatory words, but in the fifth section of art. 14, it is made particular, by the coupling with it of the phrase "*by the people.*" The use of the last phrase, in connection with the word adoption ("next after its *adoption by the people*"), would indicate a change in the meaning of the draftsman, and an intention then to point to an act and time of adoption different from that designated by the unqualified use of the word in the former sections. We cannot suppose that the words "by the people," were used idly, and not charged with some meaning. And holding that they were used of a purpose, they must carry with them evidence of an intention to indicate a different act and time from that which had been pointed out in the previous sections by the use of the word adoption, with no qualifying phrase attached to it. And, indeed, that there should be such a change of intention, runs with the current of reason. For we must perceive that there can but be an act of the people, as a political body, which had a prior part to do, in the expression of assent and ratification of the proposed article. This was to be shown by ballots cast, afterward to be counted. Various official acts must be performed, before the result of the action of the people could be authoritatively and definitely ascertained and declared. And in the nature and necessity of things, in any prudent forecast, there should be a later and a fixed, definite time, of which all should be beforehand apprized, when, in pursuance of that result, the partial system of fundamental law assented to by the people should have its adoption into the whole Constitution, as an operative part of it. Words may not be forced away from their proper signification, to one entirely different. (2 Parsons on Cont., 495.) But that we do not seek to do. It is easy to know what the word adoption means. That is not the question. What we are to determine is, not what the word means, but whether in its use, in different parts of the instrument, the framers thereof did not intend to indicate different acts and different times, as fixed by different acts. In the fifth section of the fourteenth article, the adoption by the people means

the affirmative expression of assent, by the electors, to its becoming a part of the organic law. In the other sections of the instrument, it means that time when it takes effect and is adopted into and made part by adoption of the complete constitutional system of the State. But let us go a step further, and beyond the consideration of one phrase, view the whole sentence in the fifteenth section in which that phrase occurs. It reads thus: "The existing county courts are continued, and the judges thereof, in office at the adoption of this article, shall hold their offices until the expiration of their respective terms." Now, when this sentence speaks of "the existing county courts," it must mean the county courts existing when the article went into effect. And as it went into effect on the 1st day of January, 1870, it means those existing on that day. The absurdity cannot be imputed to the constitutional convention of intending to continue the county court without also continuing the judge thereof. And yet, if the term of office mentioned in that sentence is that which expired 31st December, 1869, the court would be continued, while, through the year 1870, there would be no judge of the court. For there is no provision in this article, nor in the Constitution of which it became a part, nor in the statute law, for such an emergency. It is true that there is provision for filling vacancies in offices, and for declaring when vacancies shall be deemed to have occurred, which declaration has been made. (§§ 9, 12, Judiciary article; Const. art. 10, §§ 5, 7, 8; 1 R. S., p. 122, § 34.) From these, however, it is to be seen that there is a distinction between a vacancy in an office, and the expiration of the term of office. The first is provided for, but the last can only be filled by election, at a general election, and the person elected enters upon the office on the 1st of January following. So that, on the construction contended for by the relator, the court is continued without a judge to perform its functions, for a time longer than could have been intended. If we extend our view to other sections of the article, we shall find still greater reason to conclude that, by the phrase "at the adop-

tion of this article," was meant at the time when the article took effect. In section six, it is declared that "there shall be the existing Supreme Court, and it shall be composed of the justices now in office, who shall be continued during their respective terms." In section 12, "the Superior Court shall be composed of the six judges in office *at the adoption* of this article, * * * the Court of Common Pleas of New York, of the three judges *then in office*, * * * the Superior Court of Buffalo, of the judges *now in office*, * * * and the City Court of Brooklyn, of, etc. * * * The judges of said courts, in office *at the adoption of this article*, are continued until the expiration of their terms." In section 25, "surrogates, justices of the peace and local judicial officers, * * in office *when this article shall take effect*, shall hold their respective offices until the expiration of their terms." Now, in all these sections is evident one general purpose of continuing in existence and uninterrupted operation the courts named in them, and of continuing in office, until the expiration of their respective terms then current, the judges whom the article found in office. But the same phrases are not used to express that purpose. Some of those phrases are incompatible with any meaning as to time but the time when the article shall take effect. Such are, "now in office," "when this article shall take effect." And as all the phrases are used to indicate and effect the same purpose and result, they must all mean to point to the same time, that is, the 1st day of January, 1870. And with these other courts, as to the judges of whom the same phrase is used as is used as to county judges (*i. e.*, "in office at the adoption of this article") the construction urged by the relator would effect the same result of the court continuing, without its judges, or without a full complement of them.

It cannot be claimed, with any reason, that the intention of the framers of the proposed Constitution was to interrupt; it was rather to continue, without interruption, the powers and functions of the State, in all the co-ordinate branches of the government. We should not, from a too close adherence

to the literal signification of words and phrases, impute to them that they meant that the judicial system, as a whole, should be in abeyance, or that any of its contemplated parts should be halting behind the others, for want of power to start abreast with them. The real intention, when ascertained, will always prevail over the literal sense of terms. And the reason and intention of the law-giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity. (1 Kent Com., 462.) The intention, without doubt, was to put in complete operation an entire system of judiciary, and to have all its parts in use at one and the same time. A construction which will, without being forced, easily and naturally carry out such intention, should be adopted; and such a construction is that which holds that the phrase, " at the adoption of this article," means at the time when the article took effect. It took effect on the first day of January, 1870; and, applying its force to the terms of office of the various judges which commenced on that day, at the same instant with the new article, we have a system every part of which went into full and harmonious operation at the same time. Such construction gives reasonable and concurrent effect to every phrase used in the article to indicate the judges and justices who shall, on the article taking effect, continue in office and compose the bench of the different courts named in it. The new article taking effect on the first day of January, 1870, and not sooner, could not affect a term of office which had expired on the day before. As it did affect, however, some term, it must be the term which began on the first day of January, 1870, *pari passu*, with the new article. *Eo instanti*, with the new article, began the term, and the instant there was an article to operate there was a term to be operated upon. It was the term beginning on the first day of January, 1870.

But another question is made by the relator. It appears that the defendant became seventy years of age on the ninth day of February, 1870. A sentence in the thirteenth section of the judiciary article says: " But no

person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age." It is claimed that, if it be held that the defendant was continued in his office of county judge, after the 1st January, 1870, at all events he could not hold longer than including the last day of December of that year. The language of the sentence is very general and comprehensive. It will not do to limit the effect of it to only those justices and judges mentioned in the same section, for then it does not apply to judges of the Court of Appeals, who are equally as obnoxious to the reason of the provision. And yet, to apply it to the judges and justices whom the article found in office, and whom, by express provision, it continued in office until the expiration of the term upon which the article found them, would be to place a limit upon that provision and that term, which it is evident the article did not intend. I think that, if we consider what was the judicial system, when the convention took it up for amendment, in what way it proposed to amend it, and the possible ill effect of the proposed amendment, which it sought to guard against, we shall see that the several provisions, with the exact and full force of their language given to them, will be harmonious, and expressive of a consistent intention. The convention found a judicial system with a fixed, comparatively short term of office for the judges thereof, limited by the lapse of time, and, quite consistently therewith, no limit of age set up. This term it was proposed to lengthen to one nearly double, and the proposition was adopted. Then, as might have been expected, came in the apprehension that, during this long term, the natural decay of the powers of the man might at times leave upon the bench an inefficient judge. So as a safeguard against this, while as a general rule, fourteen years was made the term of office of the judges of the courts considered the more important, and six years of the county judges, as a particular provision, it was enacted that no person, holding any of these offices, should hold it longer than the end of the year in which he reached

the age of seventy years. It is palpable that the intention of the convention was to place this limit of age upon the comparatively very extended term which they had adopted, and to guard against the possible evil which the lengthened term had alone suggested as possible. The short term of the old judiciary article raised no such apprehension, and presented no reason for the application of such a limit. This is apparent from a reference to the journal and debates of the convention, where it is shown that this limit of age was proposed and adopted while the lengthened term of judicial officers was alone under consideration. (Vol. 4, Proc. and Debates of Conv., p. 2665 *et seq.*, 2696 *et seq.* Journal, pp. 801 and 823.) The judges and justices found in office, with their terms then current, none of course exceeding, and but few reaching, the longest known to the system to be amended, might, notwithstanding all the force of reason which influenced the adoption of the limit of age for an office capable of the new and longer term, be left to serve out those shorter and accustomed terms. Accordingly, we find that the phraseology used for that purpose is just as broad, explicit and comprehensive as that which declares the limit of age, and moreover, it is not used in connection with anything which can give to it a color of intention that it should have other than its full and perfect force. It occurs where the whole purpose is to keep in being the existing courts and to provide them with the judicial force which was then conducting them. No suggestion of meaning occurs that any of that force should be dismissed or any portion of its term abridged. But the language is direct, unmistakable, and in itself, or by anything in its neighborhood, or by anything which of necessity applies to it, unqualified. "Shall hold their office until the expiration of their respective terms," it says: While on the other hand the prohibition, that no person shall hold the office of judge, or justice, longer than until seventy years of age, does in fact, as is shown by the debates and journal, grow out of the newly provided and extended term of office; is found in connection with that matter, and can, with just reason and fair

deduction of what was the intention of the constitutional convention, be applied to and have its full operation if put alone upon persons entering on the extended term of office. As is aptly said by the learned justice who delivered the opinion at General Term : "By applying each provision to its proper subject-matter, with which it stands in connection, the whole apparent difficulty is at once solved, and each provision becomes consistent with the other, and all may stand and be carried out."

The convention did intend an instant and complete change in the organization of the court of last resort. That purpose is unmistakable, and the phraseology used is explicit. The convention did not intend an instant and complete change in the organization of the Supreme Court, and the courts inferior to it. That purpose is clear upon the record of the proceedings of the convention, from the report of the article by the judiciary committee, through all the debates and the various amendments to the article as reported, which were proposed and rejected, or proposed and adopted. The convention meant to continue in existence those courts. It meant also to continue in the conduct of them the judges, whom the article should find upon the bench of each. It meant that those judges should serve out their term, running when the article began its course, in accordance with the provisions of the Constitution under which they acquired the title to the office. It used language appropriate to effect such intention. Nor is there any necessary collision between that language and other in the article, when the object to which each is aimed is considered. Confining each to its appropriate object, each can have effect, and each purpose be accomplished.

We are of the opinion, that the defendant was legally elected to the office of county judge of Niagara county, and that he can lawfully hold the same for the term of four years from the 31st day of December, 1869. The judgment of the court below should be affirmed.

ALLEN, ANDREWS and RAPALLO, JJ., concur.

CHURCH, Ch. J., and GROVER and PECKHAM, JJ., not voting.

Judgment affirmed.