THE PEOPLE, ex rel. ALFRED LAWRENCE, Respondent, *v.* ELIAS MANN et al., Appellants.

The limitation of age contained in the judiciary article of the State Constitution (§ 13, art. 6), does not apply to a justice of the peace; he does not "hold the office of justice or judge of any court" within the meaning of the article.

A justice of the peace, therefore, may be elected to, and may hold that office, after the expiration of the year in which he reaches the age of seventy.

A concise historical statement of the origin and growth of the office of justice of the peace given.

*People, ex rel. Lawrence,* v. *Mann* (32 Hun, 440), reversed.

(Submitted November 26, 1884; decided January 20, 1885.)

APPEAL from order of the General Term, of the Supreme Court, in the second judicial department, made May 13, 1884, which affirmed an order of Special Term, awarding an absolute writ of prohibition, directed to defendants, commanding them to desist from any further proceedings in an action pending before defendant Mann as justice of the peace, brought by defendant Ferber. (Reported below, 32 Hun, 440.)

Said Mann was elected justice of the peace for a term commencing January 1, 1884, he was seventy years of age July 11, 1881.

*J. S. Millard* and *Geo. W. Parker* for appellant. A justice of the peace is not disqualified from acting as such after he has reached the age of seventy years. (*Cushing* v. *Warrick*, 9 Gray, 382; *People* v. *Gardner*, 59 Barb. 224; *Gyer's Estate*, 65 Penn. St. 311; *Wenzler* v. *People*, 58 N. Y. 520; *Settle* v. *Van Evra*, 49 id. 280; *Rice* v. *Milks*, 7 Barb. 337; *Stewart* v. *Laird*, 1 Cranch, 299; 78 N. Y. 403; *People* v. *Dohring*, 2 N. Y. Sup. Ct. 458; 45 N. Y. 818, 820; *People* v. *Brundage*, 78 id. 406; 1 Kent's Com. 431; 45 N. Y. 818; *Mann* v. *State*, 7 Ind. 135; 23 Alb. Law J. 181; Throop's Justices' Manual [2d ed.]; Broome's Legal Maxims [7th ed.], 650; *Chegaray* v. *Mayor, etc.,* 13 N. Y. 230; *Gibbons* v.

*Ogden,* 9 Wheat. 188 ; *People* v. *Gardner,* 45 N. Y. 812 ; *People* v. *Brundage,* 78 id. 406 ; *People* v. *Green,* 2 Wend. 274.)

.  *W. H. H. Ely* for respondents.   A justice of the peace comes within the scope of the clause of section 13, article 6, of the Constitution, declaring that "no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age." (*People* v. *Gardner,* 45 N. Y. 812 ; *People* v. *Brundage,* 78 id. 403 ; *People* v. *Green,* 2 Wend. 274.)

ANDREWS, J.   Section 12 of article 6 of the Constitution mentions the Superior Court of the city of New York, the Court of Common Pleas of the same city, the Superior Court of Buffalo and the City Court of Brooklyn, and continues them in existence by express constitutional mandate.   Section 13 is as follows:  "Justices of the Supreme Court shall be chosen by the electors of their respective judicial districts.   Judges of all courts mentioned in the last preceding section shall be chosen by the electors of the cities respectively in which said courts are instituted.   The official terms of the said justices and judges who shall be elected after the adoption of this article shall be fourteen years from and including the first day of January next after their election.   But no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be seventy years of age."

The question presented is whether the limitation of age contained in this section applies to justices of the peace.   That it does so apply has been determined by the judgment now under review.   The same question was considered by the General Term of the fourth department in the case of *People* v. *Dohring* (2 Supr. Ct. Rep. 458), and was determined the other way.   The *Dohring* case was decided in 1873, and the question now presented for the first time in this court, has never, so far as

we can ascertain, been considered in the courts below, except in that case and the one now before us, which was first decided at Special Term in January, 1884. It has come to the knowledge of the court from official sources that since the adoption of the present judiciary article of the Constitution many persons in different parts of the State have been elected justices of the peace, who have served after having attained the age of seventy years, some having been elected before, and others after they had reached that age. The question is therefore important, not only because it involves the interpretation of a constitutional provision, but also for the reason that it practically affects important public and private interests.

The policy of fixing by constitutional provision a limitation of age to judicial service, first established in this State in respect to the chancellor and judges of the Supreme Court by the Constitution of 1822, and abandoned in the Constitution of 1846, was re-established by the judiciary article of 1869, primarily with reference to the terms of those judges, which by the same article had been extended to the period of fourteen years (Folger, J., *People* v. *Gardner*, 45 N. Y. 819). On this ground it was claimed in the case of *People* v. *Brundage* (78 N. Y. 403), that the limitation of age in the 13th section did not apply to county judges, whose terms were by the 15th section fixed at six years instead of four years as previously established. The court, however, resting upon the broad language of the restrictive clause, held that county judges were included.

It is, however, we think, quite evident that the limitation does not apply to every officer who is invested with judicial power. It is the " office of justice or judge of any court," which the clause declares shall not be held by any person beyond the age specified. But the judicial function may be vested in a person, to be exercised for certain purposes and on particular occasions, who does not hold the " office of justice or judge of any court," within the meaning of this clause. The Constitution itself furnishes one illustration. The president of the senate, the senators and the judges of the Court of Appeals, comprise the court for the trial of impeachments, created by

the first section of the sixth article.    But neither the lieuten-ant-governor, nor the senators, although they act as judges on the trial of an impeachment, " hold the office of justice or judge of any court." The office which the lieutenant-gov-ernor holds is that indicated by his title, and so of the senators. The judicial function which they exercise in the particular case is annexed to their respective offices.    They sit as judges on the trial of impeachments, but they do not hold the office of judges while acting as such.    We think it plain that they would not be disqualified from acting as members of the court after attaining the age of seventy years, under the clause in the Constitution now in question. Another illustration is furnished in the statutes creating mayor's courts in   cities, by which judicial powers are vested for certain limited purposes in mayors, and other mu-nicipal officers.    There is such a court in the city of Hudson, and it may be in other cities, which is held by the mayor, or by the mayor in conjunction with other officers.    The mayor in these cases acts as a judge, or magistrate, but the judicial function is incident to the office of mayor.    He does not hold the office of judge, and if eligible to the office of mayor, although seventy years of age, he may, we think, discharge the duties connected with that office after that time, including the holding of the mayor's court, without a violation of the Constitution.

Returning to the immediate point now in judgment the question recurs :  Does a justice of the peace " hold the office of justice or judge of any court," within the meaning of sec-tion 13, article 6, of the Constitution ?    This office was not created by the Constitution. Justices of the peace had been known to the common law of England for a century and a half before America was discovered.    They were in their original institution mere conservators of the peace, exercising no judi-cial function.    It is said in Burn's Justice (vol. 3 [19th ed.], p. 4), that by the statute 1 Edw. III, which is the first statute that ordains the assignment of justices of the peace by the king's commission, " they had no other power but only to keep the peace."    But from time to time their powers were

enlarged, and they came to constitute a very important agency in the administration of local government in England. They discharged a great variety of duties connected with the support of the poor, the reparation of highways, the imposition and levying of parochial rates and other local affairs. (See enumeration in stat. 16, Geo. II, chap. 18.) They were invested with judicial powers for the first time (it seems) by the statute 34, Edw. III, chap. 1, which gave them power to try felonies, but then only when two or more acted together, and not singly, and it is said by Blackstone (vol. 1, p. 349), "they then acquired the more honorable appellation of justices." I do not find that they ever exercised in England jurisdiction in civil causes.

The office of justice of the peace was brought here by the English colonists. From the earliest colonial period it has existed in this country. By the Code known as "the Duke's Laws" for the government of the colony of New York, promulgated in 1665, justices of the peace were commissioned for the towns in the province, with the same powers as in England. The judicial establishment created by "the Duke's Laws," comprised a local court in each town, with jurisdiction of actions of debt and trespass under £5, to be held by the constable and overseers of the town ; a court of sessions for each of the three ridings, and a court of assize for the whole province. Justices of the peace were entitled to sit as members of the court of sessions and the court of assize, but not of the town courts. In 1691 the judicial system was reorganized by an act of the colonial legislature. By that act the town courts were changed into courts of justice of the peace, to be held by one justice and two freeholders. It was not until 1737 that a justice of the peace was empowered singly to hold a court for the trial of actions. (See Monograph upon the Courts in this State by Chief Judge Daly, preface 1 E. D. Smith's Rep. ; also 3 Daly's Rep., App.) But from the earliest colonial period until this time, justices of the peace here, as in England, have been invested with various and important functions connected with local administration, quite independent of their judicial authority. A glance

at the statutes will show how important a part these officers have had in the administration of the poor laws, the highway acts, the adjustment of town charges, and indeed in nearly every department of local administration. It is important to notice that the judicial function exercised by justices of the peace was a graft upon their original authority, and that the enlargement of their powers has not been in this direction alone, but that by gradual accretion they have come to constitute a most important factor in the corporate administrative life of towns and counties. The gradual growth of their powers and functions furnishes a good illustration of the manner in which institutions grow up and adapt themselves to the changing conditions and demands of society, until they are brought to subserve, in the most effective way, the public interests.

We have failed in the purpose of this brief historical reference to the origin and growth of the office of justice of the peace, unless it shows how widely it differs in the circumstances of its institution and development, and in the variety of its functions, from the office of judge of an ordinary court. We know, from observation, that justices of the peace are not in common speech known as judges, but are uniformly called by the distinctive title of their office. Unquestionably their jurisdiction as a tribunal for the trial of small causes is now the most important of their functions, but they have never lost their character as administrative officers, and in this respect they occupy a position and character and exercise powers unique, and in many respects quite dissimilar to those exercised by other judicial officers.

An examination of other sections in the judiciary article throws light upon the construction of the 13th section, and furnishes strong ground for an inference that justices of the peace were not intended to be included within the restrictive clause. In provisions intended to apply to judges or justices of inferior courts, and also to justices of the peace, the latter are specially mentioned by their name of office, and their inclusion is not left to inference from general words. The eleventh section of

the sixth article, after prescribing how judges of the Court of Appeals and of the Supreme Court may be removed, proceeds as follows : " All judicial officers, except those mentioned in this section and except justices of the peace and judges and justices of inferior courts, not of record, may be removed," etc.   The same language is repeated in section 18: " Justices of the peace and judges or justices of inferior courts, not of record," etc.   Justices of the peace are in a general sense judges of an inferior court, but their special designation in these provisions, by the title of their office, is a recognition in the Constitution itself of their peculiar and distinctive character, and indicates that they were not intended to be included within the general words " judges or justices of a court," as used in that instrument.   The provision in the 13th section, that " no person shall hold the office of justice or judge of any court," is to be interpreted in the light of the antecedent and subsequent sections, and so interpreting them, justices of the peace are not, we think, included.   There are other considerations which tend to support this conclusion.   There was no apparent reason or policy for subjecting justices of the peace to the limitation of age applicable to the general class of judges.   Their terms are short and are left by the amended judiciary article as they were fixed by the Constitution of 1846.   It does not appear that any public inconvenience had resulted from the absence of a limitation of age applicable to these officers.   Their number, four in each town, afford a reasonable guaranty that the public service will not suffer by the disability of incumbents arising from age, and the easy means provided for their removal would subject the public, at most, to only a temporary inconvenience.   It cannot be claimed that the prohibition in the 13th section would have been applied to justices of the peace, if they alone had been in the contemplation of the framers of the judiciary article.

We are of opinion, for the reasons stated, that a justice of the peace does not " hold the office of justice or judge of any court " within the purview of the 13th section.   To avoid misapprehension, it may be proper to say that we do not

intend to decide that the prohibition may not apply to persons in office, whose official title is not that of judge. If the office is a judicial one, and is created for the exercise by the incumbent of the judicial function — as for example, a surrogate, quite other considerations would apply than those which appertain to the case now before us. This case rests upon the dual character of the office of justice of the peace, the essential distinction between his duties and functions and those of any other judicial officer, and upon a discrimination made by the Constitution itself. (See *Settle* v. *Van Evrea*, 49 N. Y. 280.)

The order of the General and Special Terms should be reversed and the writ dismissed.

All concur.

Ordered accordingly.