In the Matter of the Application of WILLIAM F. MOORE for a Summary Order Pursuant to the Provisions of Section 330 of the Election Law. (Matter of O'Neil.)

Supreme Court, New York Special Term, August 26, 1925.

**Constitutional law — Municipal Court of City of New York — age limit of justices — State Constitution, art. 6, § 12, limiting right of any judge or justice "after he shall be seventy years of age" from holding office, does not apply to justices of Municipal Court of City of New York — Judiciary Law, § 23, requiring judge of court of record to sign certificate, on entry to office, reciting age and time when term expires, not applicable to Municipal Court justices — application for order pursuant to Election Law, § 330, to prevent designation of candidate for justice of Municipal Court of City of New York — board of elections, in contemplation of petitioner becoming seventy years of age before 1925 election, permitted filing of certificate to fill alleged vacancy — application granted.**

Article 6, section 12, of the State Constitution, providing that " No person shall hold the office of judge or justice of any court longer than until and including the

last day of December next after he shall be seventy years of age " does not apply to the justices of the Municipal Court of the City of New York. Nor is section 23 of the Judiciary Law, requiring a judge of a court of record, upon entry to office, to " sign a certificate, stating his age, and the time when his official term will expire, either by completion of a full term, or by reason of the disability of age prescribed in the Constitution " applicable to Municipal Court justices, though said court has been a court of record since 1915.

Accordingly, the petitioner, a justice of the Municipal Court of the City of New York, is entitled to an order, under section 330 of the Election Law, to prevent the designation of a candidate for justice of said court in his place and stead, where it appears that though his term will not ordinarily expire until December 31, 1929, the board of elections, in contemplation of petitioner becoming seventy years of age before the 1925 election, permitted the filing of a certificate designating another to fill the alleged vacancy by reason of the provisions of section 12 of article 6 of the State Constitution, since no vacancy exists in that court now held by the petitioner which it is necessary to fill at the 1925 elections in November.

APPLICATION for summary order pursuant to section 330 of the Election Law to prevent the designation of a candidate for justice of the Municipal Court of the City of New York.

*Gilbert & Gilbert* [*Abraham S. Gilbert* of counsel], for the petitioner.

*George P. Nicholson, Corporation Counsel* [*Arthur J. W. Hilly* of counsel], opposed.

*John F. O' Neil,* in person.

LEVY, J.:

The petitioner herein is a justice of the Municipal Court of the City of New York, Borough of Manhattan, having been elected to the office in November, 1919, for a full term of ten years, which ordinarily will not expire until December 31, 1929. On the 29th day of August, 1925, he will be seventy years of age, and the question has been raised as to whether his term of office will not end December 31, 1925, by reason of the provisions of section 12, article 6 of the Constitution of the State of New York. The board of elections has taken steps to fill the alleged vacancy at the coming November elections and a certificate has been filed by the Democratic party designating one John F. O'Neil as a candidate for such office. The petitioner has filed an objection to those proceedings on the ground that no vacancy will occur December 31, 1925, and he asks the court for a summary order to this effect, pursuant to section 330 of the Election Law (as amd. by Laws of 1924, chap. 405).

The urgency for quick action, in view of the impending election and the public importance of the question involved, has impelled me to expedite its determination and has prevented a more extended research. In the brief time, therefore, at my command — this

application having been argued before me but a day or two ago, not without anticipation of the likelihood of its ultimately being passed on by our court of last resort — I have been obliged to make haste in examining into the problem in its historical development, constitutionally, legislatively and judicially, with a view of arriving at a proper conclusion without any delay whatever.

Article 6, section 12, of the Constitution, which has been invoked against the petitioner, reads, in part, as follows: " No person shall hold the office of Judge or Justice of any court longer than until and including the last day of December next after he shall be seventy years of age." This provision is taken from section 13 of the corresponding article of the Constitution of 1846, as amended in 1869, and a proper understanding requires an examination of it in its historical perspective and in the light of the sections of the judiciary article which precede and follow it. As was said in *People ex rel. Lawrence* v. *Mann* (97 N. Y. 530, 536): " The provision in the 13th [now the 12th] section, that ' no person shall hold the office of justice or judge of any court,' is to be interpreted in the light of the antecedent and subsequent sections.  *  *  * "

Thus construing it, there was no difficulty in comprehending the age limit to apply to the judges of the Court of Appeals, the justices of the Supreme Court and the judges of the Superior Court and Court of Common Pleas of the City of New York, of the Superior Court of the City of Buffalo and of the City Court of Brooklyn, for the reason that up to the point where the age limit clause is set forth, no person had been designated in the Constitution as a judge or justice of any court, except those just mentioned. (*People ex rel. Lent* v. *Carr,* 100 N. Y. 236, 239.) Whether it also applied to the judges thereafter named was a question which has given rise to controversy. In *People ex rel. Davis* v. *Gardner* (45 N. Y. 812) and *People ex rel. Joyce* v. *Brundage* (78 id. 403) it was held to apply to county judges as well. This determination was largely influenced by the fact that the Legislature, by its enactment of chapter 86, section 8, of the Laws of 1870, indicated that county judges, as well as the judges of the higher courts were included within the scope of the age limit. The court in the *Brundage* case (at p. 406) cited with approval the following language of MARCY, J., in *People* v. *Green* (2 Wend. 274): " Great deference is certainly due to a legislative exposition of a constitutional provision, and especially when it is made almost contemporaneously with such provision and may be supposed to result from the same views of policy, and modes of reasoning which prevailed among the framers of the instrument propounded."

The statute referred to was intended to give effect by appropriate legislation to the judiciary article of the Constitution adopted the year before. Section 8 of chapter 86 of the Laws of 1870 provides as follows: "Every person elected Chief Judge or Associate Judge of the Court of Appeals, whether at the first or any subsequent election, and every person hereafter elected justice of the Supreme Court, judge of the Superior Court of the city and county of New York, or of the Court of Common Pleas of said city and county, or of the Superior Court of the city of Buffalo, or the City Court of Brooklyn, or of any county court, shall, within ten days after he enters on the duties of his office, make and sign a certificate in which he shall state his age and the time when his official term will expire, whether by effluxion of a full term or by reason of the disability of age prescribed in the Constitution * * *."

This is a clear indication that the Legislature viewed the age limitation as including within it the judges of the Court of Appeals, the judges and justices now within the Supreme Court, and the county judges. It definitely omitted surrogates, justices of the peace and judges or justices of inferior courts not of record, such as District Court justices, of whom the Municipal Court justices are but the successors. (*Worthington* v. *London Guarantee, etc., Co.,* 164 N. Y. 81; *Markland* v. *Scully,* 203 id. 158.)

A further evidence that not all judges or justices mentioned in the Constitution are included within the age disability is the decision in the *Mann* case which excluded justices of the peace from this class. The question as to the application of the constitutional age limit provision to District Court justices or their present successors — Municipal Court justices — has never come up for judicial construction before and might still be close and doubtful, were it not for the provisions of the judiciary article of the Constitution of 1894, which have apparently clarified the situation.

In that instrument sections 1–13 are devoted to the Court of Appeals and the Supreme Court, and section 12 contains the seventy-year age limitation applying to persons holding "the office of Judge or Justice of any court." But the comprehension of this phrase is quite evident now. It refers only to judges of the Court of Appeals and to justices of the Supreme Court. This becomes fully apparent from the fact that the age limit for county judges and surrogates is for the first time specifically provided for in section 15 of the same article. If it were covered by section 12, the language of section 15 would be a needless repetition, at least so far as the office of county judge is concerned. That such repetition was intended is wholly unlikely. As Judge VANN says,

referring to another provision of the Constitution which was then before the Court of Appeals: " It is difficult to suppose that the careful and able men who drafted the judiciary article were guilty of useless repetition by enacting the same thing twice upon almost the same page of the Constitution." (*Koch* v. *Mayor*, 152 N. Y. 72, 84.)

Section 17 of article 6 of the State Constitution provides for justices of the peace and District Court justices, without any mention of an age limit for these judicial officers. That this omission was intentional is gathered from the record of the proceedings of the Convention of 1894. In the " Revised Record of the Constitutional Convention of 1894 " (Argus Pub. Co., 1900), published by legislative authority under the direction of Charles E. Fitch, Secretary of the Convention, we find a proposal by Delegate C. A. Fuller which assists materially in interpreting the intendment of section 12. On page 1167 appears his offer of an amendment which would make the age limit clause read as follows: " No person shall hold the office of judge or justice of any court, including *judges and justices of inferior courts not of record,* longer than until and including the last day of December next after he shall be seventy years of age."

The words in italics were sought to be inserted by this attempt, and the amendment was obviously designed to bring in, among others, District Court justices who were then members of courts not of record. This proposal was objected to by Delegate Deyo, who thought that reasons of symmetry would require such an amendment to be inserted in section 17, which dealt with inferior courts, and that the consideration of the matter while section 12 was then being debated was premature. Accordingly, the amendment was voted down. When discussion upon section 17 was duly reached, Delegate Fuller renewed the proposition for an age limit for judges and justices of inferior courts, arguing that if the amendment should be adopted it would apply to all judicial officers throughout the State (p. 1190). The amendment was again defeated. Whatever inferences may be drawn as to the motives of the Convention in rejecting the amendment the first time, such as artistic or otherwise, there is no doubt but that its second defeat was upon the merits. It showed clearly that the Convention refused to accept any measure which would impose the age limit upon inferior court judges and justices.

Indeed, the proceedings of the Convention are valuable aids in determining the purpose and consequent meaning of a doubtful provision. Mr. Justice WILLARD BARTLETT, later chief judge of the Court of Appeals, stated the rule in this connection very aptly

in *Matter of Goedel* v. *Palmer* (15 App. Div. 86, 89): " While it is true that the intent to be arrived at in such a case as this is the intent of the People who ratified the Constitution, it is proper to look into the proceedings of the convention by which the instrument was framed, when the court is seeking to ascertain the purpose which led to the insertion of a particular provision. (Cooley on Const. Lim. [6th ed.] 80.) In this State the courts have often consulted the journals and debates of the Constitutional Convention which formulated a given article or section of the Constitution, in order to gain light upon its correct interpretation or application. (*Coutant* v. *People,* 11 Wend. 513; *Clark* v. *People,* 26 id. 602; *People* v. *Purdy,* 2 Hill, 31, 37; *Matter of Keymer,* 148 N. Y. 219, 224; *People ex rel. McClelland* v. *Roberts,* Id. 360, 369.) " In affirming the order (152 N. Y. 412) the Court of Appeals (at p. 415) also relied upon the debates of the Convention.

In this instance the deliberations are particularly important because they do not merely give the sentiments of individual delegates in debate, but they reveal the definite attitude of the Convention on the important matter of the age limit of justices of inferior courts. The question would thus seem to be settled in the negative as to the application of the seventy-year limitation of section 12 to Municipal Court justices. A difficulty, however, has been introduced by section 23 of the Judiciary Law, which reads as follows: " A judge of a court of record must, within ten days after he enters on the duties of his office, make and sign a certificate, stating his age, and the time when his official term will expire, either by completion of a full term, or by reason of the disability of age, prescribed in the Constitution. The certificate must be filed in the office of the secretary of state."

Since 1915, when the Municipal Court of the City of New York was made a court of record by legislative enactment, the justices of that court have filed certificates of age in accordance with the provisions of that section. This presents the question whether an attempt was not thereby made by the Legislature to interpret the age limit clause of the Constitution as including judges and justices of all courts of record irrespective of the time when the given courts became such. To determine this it seems necessary to review the antecedent history of that very section of the Judiciary Law.

The origin of the statute, as already observed, is chapter 86, section 8, of the Laws of 1870. By chapter 448 of the Laws of 1876 a new Code of Civil Procedure was adopted by the Legislature, and this provision became section 54 of such Code, with the following change: In place of enumerating the higher courts and the County

Court specifically, there was substituted the phrase " a judge of a court of record." Section 2 of this Code named nineteen courts of record. Whether the Legislature had the constitutional right to declare that all these nineteen were affected by the age disability clause of the Constitution, it is unnecessary to consider now. The main question relevant here is the effect of section 54 upon judicial tribunals made courts of record subsequent to its adoption; and on this point we have a precedent which is of great assistance, the status of the surrogates at various times.

In 1876, at the time of the enactment of section 54 of the Code, the Surrogate's Court was a court not of record. By chapter 416 of the Laws of 1877 this court was made a court of record. Notwithstanding this fact the Court of Appeals in 1885, after an intervening period of eight years, in *People ex rel. Lent* v. *Carr* (*supra*), held that surrogates were not within the constitutional age limit. In this decision great stress is laid upon the legislative action of 1870 in omitting surrogates and inferior court judges and justices from the necessity of filing a certificate of age, but no reference is made to section 54 as an attempted enlargement of the scope of the constitutional limitation. It would thus seem that by implication in any event the latter section was not construed to comprehend courts that were thereafter made courts of record by the Legislature.

In 1909 section 54 of the Code became section 23 of the Judiciary Law. At that time the Municipal Court was not a court of record. The Municipal Court Code of 1915 (Laws of 1915, chap. 279) made it a court of record and the effect of this is explained in *Matter of Levy* (192 App. Div. 550, 555): " It was a mere practice act governing procedure. While in terms it provided that the Municipal Court should be a court of record it had no effect upon the constitutional provisions, which spoke as of the time of the enactment thereof, nor upon the statutory provisions enacted in accordance therewith. When the Constitution was adopted the court was not of record."

We may thus apply the analogy existing in respect to the Surrogate's Court. If making this a court of record in 1877 had no effect upon the constitutional provisions which failed to include surrogates within the age limit, then the change of the Municipal Court into a court of record in 1915 likewise did not, in relation to that court, enlarge the province of the constitutional provisions " which spoke as of the time of the enactment thereof." An interesting confirmation of this view is found in *Hutkoff* v. *Demorest* (103 N. Y. 377). That case involved the constitutionality of chapter 418 of the Laws of 1886, declaring that the City Court

of New York shall be deemed a superior city court, and thereby authorizing appeals from its judgments at its General Term directly to the Court of Appeals. The court held that this statute contravened section 12 of article 6 of the Constitution in depriving the Court of Common Pleas of its power to review judgments of the Marine (City) Court. The part of the opinion that throws no uncertain light is found in the utterance upon the reargument (at p. 383). The court there said: " Section 22 of article 6 provides that ' the legislature may authorize the judgments, decrees and decisions of any court of record of original civil jurisdiction established in a city, to be removed for review, directly into the Court of Appeals.' * * * It will be observed that section 22 applies only to courts of record, and, in our judgment, *was intended to embrace only courts of record which were established in cities at the time of the adoption of article 6, viz., in December, 1869.* There were at that time in existence, in addition to the Court of Common Pleas and Superior Court of the city of New York, several other local courts established in cities, viz., the Superior Court of the city of Buffalo, the City Court of Brooklyn, which were courts of record, also the Marine Court of the city of New York. * * *

" Section 22 of article 6 was, in our judgment, intended to authorize appeals direct to the Court of Appeals *from the courts of record in existence at the time of the adoption of the article, whose judgments were at that time reviewable, in the first instance, in the Supreme Court. The Marine Court of the city of New York was a court of great importance, of ancient origin, and transacting a very large amount of business. * * * Yet it was not a court of record, in the legal sense of the term, until 1872.* The power to review its judgments, in the first instance, was vested by law in the Court of Common Pleas. * * * By limiting the power of the legislature to authorize appeals directly to this court, to appeals from judgments of courts of record, we think that it was the intention of section 22 of article 6 to exclude the Marine Court from its operation." (Italics mine.)

This quotation would seem to indicate, therefore, that any legislation as to courts of record in so far as it was intended to carry out the constitutional direction with regard thereto, could have reference only to such courts as were of record at the time of the adoption of such constitutional provision, and not as to those subsequently advanced.

A consideration of the reasons which evidently persuaded the Court of Appeals in the *Mann* case to exclude justices of the peace from the constitutional limitation of age seems exceedingly fitting, and may be repeated here in support of the spirit manifested

by the members of the Constitutional Convention when they rejected the proposal to apply this limitation to judges and justices of inferior courts. The court there (at p. 536) took occasion to say: " There was no apparent reason or policy for subjecting justices of the peace to the limitation of age applicable to the general class of judges. * * * It does not appear that any public inconvenience had resulted from the absence of a limitation of age applicable to these officers. Their number, four in each town, afford a reasonable guaranty that the public service will not suffer by the disability of incumbents arising from age, and the easy means provided for their removal would subject the public, at most, to only a temporary inconvenience."

The reasoning there adopted, it seems to me, applies with even greater force to the Municipal Court justices, whose number is relatively large and whose great familiarity with the practical conditions in the locality renders them particularly fitted to dispose of the litigation that arises. The petitioner has rendered eminent service in his position for thirty-five years, and the importance of retaining men like him upon the bench in the interest of the public service must have been within the contemplation of the framers of the Constitution when they refused to apply the age limitation to District Court justices. I am, therefore, constrained to decide that neither the letter nor the spirit of the Constitution nor a fair construction of section 23 of the Judiciary Law, would seem to bring Municipal Court justices within the constitutional age limit applicable to certain other judicial officers. It follows that no vacancy exists in that court now held by the present incumbent, which it is necessary to fill at the November elections next ensuing, and the motion of the petitioner must, therefore, be granted. Settle order on one day's notice.