(No. 21727.—

The People *ex rel.* Ruthanna M. Browne, County Collector, Appellee, *vs.* Eastern Illinois and St. Louis Railway Company, Appellant.

*Opinion filed June 22, 1933.*

Free P. Morris, and Roscoe C. South, (K. L. Richmond, of counsel,) for appellant.

A. Fred Kendall, State's Attorney, (Elmer A. Taylor, of counsel,) for appellee.

Byron M. Merris, and Thomas H. Armstrong, *amici curiæ*.

Mr. Justice DeYoung delivered the opinion of the court:

The treasurer and *ex-officio* collector of Iroquois county, applied to the county court of that county for judgment against and an order for the sale of the lots and parcels of land returned delinquent for non-payment of the general taxes for the year 1931. The Eastern Illinois and St. Louis Railway Company filed objections to a portion of the taxes levied for road and bridge purposes in three towns of the county. The railway company's objections were overruled, judgment was rendered and the company prosecutes this appeal.

Upon the requests of the several commissioners of highways, the boards of auditors of the towns of Ash Grove, Fountain Creek and Milford, in Iroquois county, at their meeting on the first Tuesday in September, 1931, consented in writing to the levy, for road and bridge purposes for that year, of eight cents in addition to twenty-five cents on each one hundred dollars of the assessed value of the taxable property in their respective towns. These taxes were accordingly extended by the county clerk, within the jurisdictions named, at the rate of thirty-three cents, instead of twenty-five cents, on each unit of the assessed value specified. The railway company paid the road and bridge taxes, exclusive of the portion levied by virtue of the additional rate of eight cents. To that portion its objections are directed.

The first contention of the appellant is that the consent of the board of town auditors to the additional tax levy requires the participation, as a member of that board, of a justice of the peace who, as a judicial officer, is prohibited by the constitution from exercising other than judicial functions, and that the consent, and, in consequence, the addi-

tional tax levy, are therefore void. The third article of the present constitution provides that: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The powers of none of the three departments of the State government are specifically defined in this article. By section 1 of article 6 of the constitution, the judicial powers, except as otherwise provided in that article, are "vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities and incorporated towns." The constitution does not prescribe the powers of justices of the peace and the only provision in that instrument respecting their jurisdiction is the one found in section 21 of article 6 which merely requires uniformity.

Justices of the peace were known to the common law of England for a century and a half before the discovery of America, but they were in their original institution mere conservators of the peace, as the name implies, exercising no judicial functions. (1 Sharswood's Blackstone's Com. *pp. 351, 355; *People* v. *Mann,* 97 N. Y. 530; *People* v. *Howland,* 155 id. 270; *Albright* v. *Lapp,* 26 Pa. St. 99). The powers of justices of the peace were enlarged as time progressed until they constituted an important agency in the administration of local affairs. They performed a great variety of duties connected with such affairs, among them the support of the poor and the repair of highways. It appears they first were invested with judicial powers by the statute 34, Edward the Third, 2 Stat. at Large (Eng.), pp. 135, 136. Thereafter from time to time their powers were enlarged. (2 Hawkins' Pleas of the Crown, (8th ed.) pp. 40, 61; 5 Bacon's Abridgment, (1844 ed.) pp. 396, 433; 2 Reeves' History of the English Law, pp. 328, 332).

From the earliest period, justices of the peace in the English colonies of North America were invested with various and important functions connected with local administration, but not judicial in character. Under the code, known as the Duke's Laws for the Government of the Colony of New York, promulgated in 1665, justices of the peace were commissioned for the towns, with like powers as in England. (*People* v. *Mann*, 97 N. Y. 530, 534). In Virginia they were authorized in 1742, while sitting as a county court, to contract for the building of bridges and the making of causeways and by levies to discharge the cost thereof. (5 Henning's Virginia Stat. at Large, pp. 175, 489). Likewise in the early history of Massachusetts, they were clothed with administrative powers. (1 Laws of Mass. 1780-1791, p. 319). By the laws of the Northwest Territory, justices of the peace were charged with the performance of administrative duties. Maxwell's Code, 1796, pp. 107, 109, 125, 127, 128, 139.

The framers of each of the three constitutions of this State adopted the office of justice of the peace, but they did not define its powers or duties. (Const. 1818, art. 4, sec. 8; const. 1848, art. 5, sec. 27; const. 1870, art. 6, sec. 21). In adopting the office, they recognized its ancient functions, which were largely administrative, and they committed to the legislature the definition of its powers and duties. Under each constitution, the powers of justices of the peace have been conferred and their duties have been prescribed by legislative acts. Section 1 of article 13 of the Township Organization act (Cahill's Stat. 1931, p. 2720; Smith's Stat. 1931, p. 2878), makes the justices of the peace in each town members of its board of auditors. The duties imposed by such membership do not differ essentially from administrative functions of the character long exercised by them. It follows that the performance of the duties incumbent upon a member of a board of town auditors, including his consent to an additional or greater tax levy for

road and bridge purposes, does not constitute the exercise of legislative or executive powers by a judicial officer in violation of article 3 of the constitution.

The appellant, however, further contends that, in consenting to an increased tax rate for road and bridge purposes, the board of auditors exercises an arbitrary power and permits the taking of private property without affording the tax-payers an opportunity to be heard. The statutory provision assailed is that portion of section 56 of the Road and Bridge act (Cahill's Stat. 1931, pp. 2416, 2417; Smith's Stat. 1931, p. 2490) which reads: * * * "the county clerk shall not extend * * * against the taxable property of any town, a rate in excess of twenty-five (25) cents on each one hundred dollars valuation of the taxable property of the town, unless before the first Tuesday in September, the board of highway commissioners of the town shall have secured the consent in writing of a majority of the members of the board of town auditors to the extension of a greater rate, and in such case the rate shall not exceed that approved by a majority of the members of the board of town auditors, and in no case shall it exceed thirty-three (33) cents on each one hundred dollars valuation of the taxable property of the town."

The first sentence of section 56 of the Road and Bridge act provides that at a regular meeting to be held on the first Tuesday in September, the highway commissioner in each town shall annually determine and certify to the board of supervisors or county commissioners, the amount necessary to be raised by taxation for the proper construction, maintenance and repair of roads and bridges. Paragraph B, section 42, of the same act provides that the town clerk shall act as the clerk of the highway commissioner; and section 50 requires the commissioner to be present at the office of the town clerk on the first Tuesday in September of each year to determine the tax rate to be certified. Sections 3 and 4 of article 13 of the Township Organization

act require the board of auditors to meet at the town clerk's office on the same day, and, among other duties, to examine the accounts of the commissioner of highways. Moreover, the written consent of a majority of the members of the board of auditors to the levy by the highway commissioner of a higher rate than twenty-five cents on each one hundred dollars of the assessed value of the taxable property in the town may only be given at the regular meeting of the board on the first Tuesday in September. *People* v. *Chicago and Eastern Illinois Railway Co.* 319 Ill. 163; *People* v. *Chicago and Eastern Illinois Railway Co.* 319 id. 171; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 319 id. 415; *People* v. *Wabash Railway Co.* 321 id. 39; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 321 id. 496; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 321 id. 499; *People* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 322 id. 78; *People* v. *Chicago, Lake Shore and Eastern Railroad Co.* 323 id. 159; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 323 id. 536.

The foregoing statutory provisions fix the time and place for the joint meeting of the highway commissioners and the board of auditors. At that meeting the town auditors examine the accounts of the highway commissioner and the condition of the road and bridge funds is disclosed to them. The information they obtain enables them to consider and act advisedly upon the highway commissioner's request for taxation at a rate requiring their consent. At this meeting, the time and place of which are definitely fixed by law, all tax-payers may express their views. Hence there is neither the vesting of arbitrary power in the board of auditors nor the deprivation of property without due process of law.

The judgment of the county court is affirmed.

*Judgment affirmed.*