Joseph Koch, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

Constitutionality of Ch. 601, L. 1895 — Police Justices in the City and County of New York — Abolition of Office — Abridgment of Terms. Chapter 601, Laws of 1895, relating to the inferior courts of criminal jurisdiction of the city and county of New York, is constitutional, and abolished the office of police justice therein; and as the abolition of the office carried with it, as a necessary and inseparable incident, the termination of the official life of its several incumbents, the abridgment of their terms of office, as provided in the act, is not in conflict with section 22, article 6 of the Constitution, providing that " Justices of the peace and other local judicial officers provided for in sections seventeen and eighteen, in office when this article takes effect, shall hold their offices until the expiration of their respective terms."

*Koch* v. *Mayor*, 5 App. Div. 276, affirmed.

(Argued January 19, 1897; decided March 2, 1897.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 22, 1896, which affirmed a final judgment in favor of defendant entered upon a decision of the court on trial at Special Term sustaining a demurrer to the complaint.

This action was brought to recover three months' salary alleged to be due the plaintiff as a police justice of the city of New York.

The plaintiff alleged in his complaint that on the 4th of January, 1893, he was duly appointed a police justice of the city of New York by the mayor of that city for the term of ten years at an annual salary of $8,000, payable quarterly ; that he duly qualified and entered upon the discharge of the duties of said office, and has always been ready and willing to perform the duties thereof as required by law; that on May 10th, 1895, an act was passed by the legislature of the state of New York, entitled " An act in relation to the inferior courts of criminal jurisdiction of the city and county of New York," which is referred to as a part of the complaint, and that under

such act the mayor of said city assumed to appoint nine city magistrates in the city and county of New York and five justices of the Court of Special Sessions of said city and county. Notwithstanding the passage of this act, as the plaintiff further alleged, under and pursuant to sections 17 and 22 of article VI of the Constitution of this state, he is entitled to hold office until the expiration of his term on the third of January, 1903, and that on the first of October, 1895, there was due and payable to him, under and by virtue of the said appointment as police justice, the sum of $2,000, which had been duly demanded and a claim therefor presented to the comptroller of said city for adjustment, but the same had neither been paid nor adjusted although more than thirty days had elapsed since the presentation of such claim.

The defendant demurred to the complaint upon the ground that the facts set forth do not constitute a cause of action.

By the usual course of procedure the demurrer was sustained, the complaint dismissed and a final judgment entered accordingly, which upon appeal to the Appellate Division was duly affirmed. From the judgment of affirmance the plaintiff appeals to this court.

*George Hoadly, A. J. Dittenhoefer* and *Matthew Hale* for appellant. The law, in so far as it attempts to abolish plaintiff's office, is unconstitutional. (Const. N. Y. art. 6, § 22; *Rathbone* v. *Wirth,* 150 N. Y. 459; *People ex rel.* v. *Draper,* 15 N. Y. 543; *Cass* v. *Dillon,* 3 Ohio St. 609; *Power* v. *Village of Athens,* 99 N. Y. 592; *In re Breslin,* 45 Hun, 214; *In re W. S. A. & P. R. R. Co.,* 115 N. Y. 447; *Lyddy* v. *Long Island City,* 104 N. Y. 218; *Chicago Ry. Co.* v. *U. S.,* 127 U. S. 406.) The part of the law that abolishes the office of police justice may be set aside without invalidating the part that creates the new office of city magistrates. (*People ex rel.* v. *Kenny,* 96 N. Y. 294; *Packet Co.* v. *Keokuk,* 95 U. S. 89; *Baldwin* v. *Franks,* 120 U. S. 685.) Plaintiff can maintain this action without resorting to quo warranto to establish his title to office. (*Curtin* v. *Barton,* 139 N. Y.

511; *People ex rel.* v. *Common Council of Brooklyn*, 77 N. Y. 503; *Rex* v. *Whitwell*, 5 T. R. 85.)

*Robert Earl* for appellant.    Under the Consolidation Act (Laws of 1882, chap. 410, § 1542), and the amendments thereto, the plaintiff's term of office was ten years; and, as one of the fifteen police justices, he was a magistrate, justice of the Court of Special Sessions, justice of the Police Courts and member of the board of police justices.    He was, therefore, a judge or justice of an inferior court, and entitled to hold his office until the expiration of his term.    (Const. N. Y. art. 6, §§ 17, 18, 22; *People ex rel.* v. *Wemple*, 125 N. Y. 485; *Wenzler* v. *People*, 58 N. Y. 516; Const. N. Y. 1821, art. 1, § 15; Const. N. Y. 1846, art. 14, § 1; *People ex rel.* v. *Gardner*, 45 N. Y. 812.)

*Lewis L. Delafield* for respondent.    The Constitution has not imposed any limitation upon the power of the legislature either to abolish the office of police justice or to shorten the term of the incumbents of that office.    (L. 1848, ch. 153; L. 1882, ch. 410, §§ 1541–1568; *Wenzler* v. *People*, 58 N. Y. 516; *People* v. *Morgan*, 5 Daly, 161; 58 N. Y. 679; *Coulter* v. *Murray*, 4 Daly, 506; Const. N. Y. art. 6, §§ 1, 4, 7, 14, 15, 17, 18, 22; *Nevada* v. *Tilford*, 1 Nev. 244; *North Dakota* v. *Faussett*, 1 N. D. 190; *Missouri* v. *Hermann*, 11 Mo. App. 43; *In re Oliver Lee & Co.'s Bank*, 21 N. Y. 9; *Demarest* v. *Mayor, etc.*, 74 N. Y. 161, 167; *Smalley* v. *Snell*, 32 Pac. Rep. 1062; *People* v. *Jaehne*, 103 N. Y. 182.)    There is no constitutional objection to that portion of the statute under consideration which provides for the appointment of the new justices of the Court of Special Sessions and the new city magistrates.    (*Curtin* v. *Barton*, 139 N. Y. 505; *People ex rel.* v. *Porter*, 90 N. Y. 68, 72; *Anderson* v. *Reilly*, 66 N. Y. 189; *People ex rel.* v. *Terry*, 108 N. Y. 1; *Bocock* v. *Cochran*, 32 Hun, 521.)

VANN, J.    On the 10th of May, 1895, the legislature of this state enacted that: " From and after midnight of the thirtieth day of June, 1895, the office of police justice in the city and

county of New York is abolished, and all power, authority, duties and jurisdiction then vested in the police justices in the said city and county of New York, and in the courts held by them, including the Court of Special Sessions, and in the board of police justices, and in the clerks, deputy clerks, police clerks and police clerks' assistants, and in all other officers or employees of said justices or courts, or of the board of police justices, shall cease and determine." (L. 1895, ch. 601, § 1.)

The main question presented for decision by this appeal is, whether that section is in violation of the Constitution of the state.

The legislature has all the power of legislation that the People of the state can grant, except as it is restrained, expressly or impliedly, from the exercise of particular powers by the Constitution. (Art. III, § 1; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *People ex rel. McLean* v. *Flagg,* 46 N. Y. 401.) Since power to legislate is the rule, and restraint upon that power the exception, as was said by this court in an important case, " in inquiring whether a given statute is unconstitutional, it is for those who question its validity to show that it is forbidden." (*People ex rel. Wood* v. *Draper,* 15 N. Y. 532, 543.) Subject only to the restrictions of the Constitution, the legislature may do what it thinks best with a public office or a public officer, by abolishing the office, shortening or lengthening the term thereof, increasing or diminishing the salary and the like. (*Nichols* v. *MacLean,* 101 N. Y. 526, 533.) We need not look, therefore, at the grant of power, but simply at the restraints upon the grant, in order to determine whether legislation is constitutional. The main restraints, found in the first article, and which are essential to constitutional government, are not invoked by the appellant. The provision that he relies upon to nullify the legislation in question is section 22 of article VI, which is as follows: " Justices of the peace, and other local judicial officers, provided for in sections seventeen and eighteen, in office when this article takes effect,

shall hold their offices until the expiration of their respective terms." Sections seventeen and eighteen, thus referred to in order to define what is meant by "other. local judicial officers," are in these words : " § 17. The electors of the several towns shall, at their annual town meetings, or at such other time and in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be four years. In case of an election to fill a vacancy occurring before the expiration of a full term, they shall hold for the residue of the unexpired term. Their number and classification may be regulated by law. Justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law. Justices of the peace and district court justices may be elected in the different cities of this state in such manner, and with such powers, and for such terms, respectively, as are or shall be prescribed by law; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities, or appointed by some local authorities thereof.

" § 18. Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct."

By an analysis of the judiciary article we may discover its broad purpose and general scope, in the light of which we may see clearly the meaning of the particular sections under consideration.

Sections one to four, inclusive, are devoted to the Supreme Court, the great court of original jurisdiction with important

and in many instances final appellate power, by which the bulk of the judicial business of the state is transacted. That court, by those sections, is in terms "continued," its jurisdiction defined, the terms of the judges in office and their successors fixed, as well as those of others added by transfer from abolished courts and additional justices to be elected, and their successors. Provision is made for the division of the state into judicial districts and departments, an appellate division is created and its powers and jurisdiction defined, the method of filling vacancies prescribed, and other details determined.

By the fifth and sixth sections the superior City Courts of New York, Brooklyn and Buffalo, the venerable Circuit Court and Court of Oyer and Terminer were expressly abolished, their jurisdiction vested in the Supreme Court, and all actions and proceedings then pending therein transferred to that court for hearing and determination.

By the seventh, eighth and ninth sections the Court of Appeals is expressly "continued," the terms of the judges in office and their successors fixed, its jurisdiction, subject to further restriction by the legislature, determined, provision made for the filling of vacancies and the like.

By sections ten to thirteen, inclusive, the conduct of the judges of both of the courts thus continued is in some respects regulated and provision made for their compensation and for their removal by impeachment or otherwise.

By sections fourteen and fifteen the existing County Courts and Surrogates' Courts are "continued" by express language, the terms of the judges in office and of their successors settled, their powers and jurisdiction established and other details arranged. Courts of Sessions, except in the county of New York, were abolished and the jurisdiction thereof, as well as all actions and proceedings pending therein, transferred to the County Courts.

Thus we find that by the first fifteen sections of the judiciary article four great courts were continued, the tenure of the judges in office when the Constitution took effect, as well as that of their successors, expressly prescribed, seven other

important courts, theretofore existing, abolished and their powers merged in the Supreme Court. The courts thus continued were evidently regarded as essential to the judicial system of the state, and hence were expressly placed beyond disturbance by the legislature. The utmost care was taken by clear and expressive words to make those courts permanent and to place the judges thereof, present and future, beyond the danger of displacement or interference by the law-making power. The theory was to simplify the judicial system by reducing the number of high courts and to embed those retained so thoroughly in the fundamental law that they could not be changed or abolished without amending the Constitution. One of those courts, that of the surrogate, until then dependent upon statute, was made a constitutional court for the first time. After thus providing for the superior courts of the state, the rest of the judiciary article is mainly devoted to inferior and local courts of civil and criminal jurisdiction. Here, however, we find a departure in method, for while the great courts above named are continued and preserved by the Constitution, and their judges are protected by fixed terms, the inferior courts and the judges thereof are simply recognized as in existence and left to the legislature. To this there is one exception, for by section seventeen the electors of the several towns, not cities, are directed at their annual town meetings, or at such other time and in such manner as the legislature may direct, to " elect justices of the peace whose term of office shall be four years." Nothing is said about Justices' Courts as the creatures of the Constitution, but justices of the peace in *towns* are named and their tenure of office fixed, as they had been in prior Constitutions.

By sections sixteen, seventeen and eighteen the legislature is authorized to provide for the election of local officers to discharge the duties of county judge and surrogate in cases of inability or vacancy, to prescribe the method of removing for cause justices of the peace and judges or justices of inferior courts not of record, to regulate the election of justices of the peace and District Court justices in the different cities of the

state and to fix the powers and terms of those officers. Authority is also given to establish inferior local courts of civil and criminal jurisdiction with certain restrictions upon their methods and powers. No provision, however, is made in the three sections last named for any particular court, or for any particular office, or the term of any particular officer, except justices of the peace in towns. Up to this point, therefore, there is no restriction found in the Constitution upon the power of the legislature to abolish existing local courts or to change the terms of existing local judicial officers, with the single exception of justices of the peace.

Section nineteen refers to the clerks of the Supreme Court and Court of Appeals, and section twenty prohibits judicial officers, except justices of the peace, from receiving fees or perquisites ; prevents certain judges from practicing law or acting as referee, and provides that no one shall be eligible to the office of judge of the Court of Appeals, justice of the Supreme Court, county judge or surrogate, except in the county of Hamilton, who is not an attorney and counselor of this state.

Section twenty-one provides for the publication of the statutes and decisions of the courts, while section twenty-three, the last section of the article, enacts that Courts of Special Sessions shall have such jurisdiction of misdemeanors as may be prescribed by law. In the light of this review, what is the function of section twenty-two, the last but one of the article in question ?

Three theories of construction are suggested for consideration : 1. That it was intended to prevent the legislature from abolishing existing inferior local courts of civil or criminal jurisdiction until the terms of all the judges thereof in office when the article took effect had expired. 2. That it was intended to protect justices of the peace and other local judicial officers provided for in sections seventeen and eighteen, in office when the article took effect, from displacement by the legislature. 3. That it was a saving clause to insure existing officers of the kind named against removal by the

mere adoption of the new judiciary article. Let us examine each of these theories, keeping in mind the general purpose of the judiciary article as it appears from the analysis already made.

1. The office of police justice of the city and county of New York was not created by the Constitution, but by the legislature, as will appear from an examination of the several Constitutions at different periods in force in this state, as well as the various acts of the legislature relating to the subject. (L. 1848, ch. 153; L. 1873, ch. 538; L. 1882, ch. 410, §§ 1541 to 1568.) The judiciary article adopted in 1870 did not make it a constitutional office, nor prevent the legislature from abolishing it and thereby terminating the official tenure. (*Wenzler* v. *People,* 58 N. Y. 516.) Although there were many inferior local courts of civil and criminal jurisdiction and judges or justices of inferior courts not of record, created by statute and in existence at the time the Constitution was adopted, not one of them is continued *eo nomine,* or so embedded in that instrument as to be placed beyond the reach of the legislature, except justices of the peace in towns. While care was taken not to displace them, no limit was placed upon the power of the legislature in dealing with them, and the right to create others was expressly conferred. Every city, if not every village in the state, presents one or more examples of such courts and officers. The silence of the Constitution with reference to them is significant. Neither the office of police justice nor any of the other judicial offices created by statute, except that of surrogate, is mentioned by name; yet, if it was intended to make the courts held by these officers permanent, one would expect to find an express provision to that effect the same as in the case of surrogates. While certain courts are expressly continued and certain others expressly discontinued, Police Courts are included under neither head, for the Constitution does not mention them even indirectly, except as power is given to the legislature to establish "inferior local courts of civil and criminal jurisdiction." The logical inference is that there was no intention to limit the power of the legislature to continue or

to abolish the numerous statutory courts that existed all over the state when the Constitution was framed. It was left to sound legislative discretion to continue such tribunals, to create more of them or to abolish them altogether, the same as the power had been constantly exercised under prior Constitutions. ( *Wenzler* v. *People, supra* ; *People ex rel. Gere* v. *Whitlock,* 92 N. Y. 191.) Extended discussion on this point is rendered unnecessary by the candid admission of one of the learned counsel for the appellant, whose position upon the subject is defined in the following quotation from his brief : " We do not deny the power of the legislature to abolish these inferior courts, except justices of the peace in towns; what we, contend for is that, in so doing, they are expressly forbidden to dislodge the incumbents."

2. This brings us to the second theory of construction, which imputes to those who drew and adopted the Constitution an intention to protect certain individuals then holding inferior offices, but to leave the tenure of their successors, as well as the office itself, to the control of the legislature. No satisfactory reason is given for this discrimination, and the construction suggested is open to serious objections. The Constitution should receive a reasonable construction, and, unless forced to do so by plain and unequivocal language, the courts should not so construe a great fundamental act, regulating the government of a state, as to lead to an absurdity. Why, then, it may be asked, should the Constitution concern itself any more about present than future incumbents of such offices? Can the spirit of party or of faction be supposed to injure the plaintiff but not his successor? Is it reasonable to believe that the members of the Constitutional Convention, or the People, had such tender solicitude for the plaintiff and his associates as to carefully shield them from loss of office or salary, and yet leave their successors with no protection whatever against the legislative will? As their predecessors could have been displaced by statute, and as their successors admittedly can be, is it possible that they alone cannot be? Is it reasonable to hold that an officer can continue

when the office itself is abolished or that an office can be abolished for every purpose except the personal advantage of the officer? As the periods for which these officers were appointed vary in length, is it possible that it was the intention to keep the holder of the longest term in office after all of his associates had left the bench, which would thus be unable to perform the functions required by the statute that created it? Must the continuance in office of these petty judicial officers prevent the legislature from reorganizing the system of local criminal courts in the city of New York until January 5, 1904, when the term of the last incumbent would expire?

The word "terms," as used in section twenty-two, refers not to constitutional but to statutory officers, justices of the peace excepted. It does not necessarily mean a tenure so fixed as to prevent the abolition of the office, but simply that the tenure, for the period fixed by the statute, continues, unless the office is abolished or the incumbent dies, resigns or is removed. Inasmuch as the Constitution does not attempt to regulate permanently the terms of these officers, the fair inference is that the term expires with the office when that is abolished by the legislature. The destruction of the office naturally involves the official death of the officer. A construction making it impossible for the term of statutory officers to end otherwise than by lapse of time, when it might result in serious inconvenience and disorder, does not seem reasonable. Necessarily a term may expire otherwise than by lapse of its full period, as by the non-residence or insanity of the incumbent, for instance. Probably no one would contend for such a literal construction as would continue in office a non-resident or an insane person, yet the result of holding that the legislature can abolish the office but cannot dislodge the incumbent is, as I view it, equally narrow and unsafe. Such a construction would show a care taken by section twenty-two of article VI to protect the plaintiff, who was appointed to office, that was not extended by section three of article XII to elected officers, whose terms were ruthlessly abridged.

The records of the convention which adopted the present Constitution throw some, though perhaps not very valuable, light upon the question.    When the judiciary article was under consideration an amendment was offered to the effect that the terms of the judicial officers mentioned in section eighteen, then in office, should not be affected thereby.    This was opposed by the chairman of the judiciary committee, upon the ground that the Constitution established a fixed system as to courts of general jurisdiction, and left to the legislature the power to regulate the inferior courts, and it was asked in substance how members from the interior could know the wants of the local inferior courts in the cities of New York and Brooklyn.    It was urged that the Constitutional Convention could not pass upon those subjects intelligently, but should leave them to the legislature.    After discussion the amendment was defeated.  (Record of Const. Con. p. 1274.)    On another occasion an amendment was introduced to continue the City Court of New York, but it was opposed upon the ground that the legislature should not be prevented from dealing with that court in the exercise of its wisdom, either by abolishing it or reducing its jurisdiction, and that it should not be treated differently in any particular from any other inferior and local court.    This amendment was also lost.  (Id. p. 1150.)    Thus it appears that when the members of the convention voted directly upon a proposition, which would have had the precise effect that is now claimed for section twenty-two, they rejected it.    The arguments used by the chairman of the judiciary committee, whose opinion upon the subject may be supposed to somewhat reflect that of the convention, shows that his understanding was that the legislature should be left to deal with the inferior local courts according to its sound discretion.

An argument of weight, although perhaps not of controlling importance against the construction contended for, is found in the fact that section twenty-two includes " justices of the peace " with " other local judicial officers."    If the object of the section was to protect the incumbents of the offices named, why were justices of the peace included ?    They needed no

protection, because by an earlier section not only their office but the term thereof as well became a part of the Constitution. It is difficult to suppose that the careful and able men who drafted the judiciary article were guilty of useless repetition by enacting the same thing twice upon almost the same page of the Constitution. If section twenty-two is intended to limit the power of the legislature over justices of the peace by prescribing that those in office at the time of the adoption of the Constitution should not be legislated out of office, it is as to those officers merely empty words, but if the third theory of construction is adopted no such result follows.

3. Construed as a saving clause, section twenty-two, instead of repeating what had already been enacted in part, has a useful and independent function to perform. As the makers of a constitution are subject to no restraint by a higher law, it is important for them to see that they do not overturn that which they wish to preserve by the mere adoption of a radical, permanent and controlling act. Otherwise, existing laws and institutions might be unintentionally swept away. It is, therefore, to be expected that free use would be made of saving clauses in such an instrument, in order to preserve that which might otherwise be undesignedly destroyed, or, by being left open to question, result in doubt and litigation. We find in all the Constitutions of the state that saving clauses have been inserted, sometimes when hardly necessary, but from more abundant caution, so as to expressly continue such laws and institutions as were not intended to be superseded. (Const. 1877, art. 35; Const. 1821, art. 1, § 16, art. 7, § 13, art. 9, § 1; Const. 1846, art. 1, §§ 17 and 18, art. 14, §§ 1, 2, 3, 10, 12; Judiciary Article of 1870, §§ 6, 12, 15, 25.) When the Constitution expressly continued certain courts, and placed them and the judges thereof beyond legislative action, but simply recognized other courts and the judges thereof as existing without providing for their continuance, a doubt might arise, if nothing further was said, whether the existing statutory courts would be without judges because the Constitution was silent upon the subject. By inserting section twenty-two, sub-

stantially at the close of the article, where a saving clause
would naturally be looked for, this doubt was removed and
possible confusion prevented.   As was said by one of the four-
teen justices of the Supreme Court who have passed upon the
question, all reaching the same result, " This provision was
adopted only out of caution lest a question might arise whether
the general effect of the revision might not be to oust such
judicial officers from their offices.   It grew out of that over-
caution common in constitutional and statutory revision.   It
was not meant to take away the power of the legislature over
the offices and tenure of the police justices."   By no other
construction can the Constitution be saved from the imputa-
tion of meaningless surplusage or idle repetition.   It is obvious
that, if section twenty-two is a saving clause as applied to jus-
tices of the peace, it has the same effect when applied to other
local judicial officers mentioned in the same sentence.

An example of the care taken to remove doubt and pre-
vent possible disaster appears in section five of the judiciary
article, which provides that the judges of the courts by that
section abolished shall be justices of the Supreme Court for
the remainder of the terms for which they were elected or
appointed, thus removing any doubt as to the intention that
those judges should continue as such even after the offices,
until then held by them, had been abolished.   The intention
would perhaps have been plain enough without such precau-
tion, but, as it was possible that doubt should arise, it was dis-
pelled in advance.   While section sixteen of article one has a
general saving clause as to the common law and existing acts
of the legislature, still it is not sufficient to accomplish the
purpose of section twenty-two of article six, when construed
as a saving clause, because it is expressly provided by the
same section that all such parts of the common law and of the
acts of the legislature as are repugnant to the Constitution are
thereby abrogated.   If the intention had been to keep these
police justices in office, with no power to dislodge them by
legislation, why was not the same precaution taken as was
used in the case of the judges of the abolished courts by pro-

viding that they should continue in office during the remainder of the terms for which they were elected or appointed ?

I think that section twenty-two was intended to operate as a saving clause, and that it has no other effect. This left the legislature with untrammeled power to repeal the act creating the offices in question and to re-organize the local courts of criminal jurisdiction in the city of New York upon the new basis that it adopted. While we are all of one mind as to the power of the legislature to pass the act under review, we differ as to the meaning of section twenty-two of article six. The views of some members of the court upon the subject have already been expressed. Others are of the opinion that the intention of the Constitution was to retain the police justices in office for their respective terms until, by the lapse of time, death or otherwise, outside of legislation, their terms should expire ; that, if there had been no abolition of the court, this legislation could not be sustained ; that it would not have been competent for the legislature to declare that the offices of these justices should terminate and be vacant and to provide for the election of others in their places during the periods for which they were appointed ; that, however, there was no intention to take away from the legislature the right of abrogating the court, and that the abrogation of the court carried with it as a necessary and inseparable incident the termination of the official life of the several incumbents of the office ; that as the new court differs in its organization and jurisdiction from the old we have no power to say that the abolition of the court was a scheme to turn these men out of office, or to speculate on the reasons which induced the legislature to exercise the acknowledged power to abolish courts not established by the Constitution, and that the act in question is, therefore, valid.

While we thus differ as to the method of reaching the result, we are all of the opinion that the legislation, challenged by this appeal, is not in violation of the Constitution, and that the judgment should be affirmed.

All concur.

Judgment affirmed.