(74 Misc. Rep. 551.)

**PEOPLE ex rel. SWIFT et al. v. LUCE et al.**

(Supreme Court, Special Term, Albany County. December, 1911.)

1. COURTS (§ 43*)—CREATION—POWER OF LEGISLATURE.

　　Since the Legislature has supreme power except as prohibited by the Constitution, in the absence of constitutional prohibition, it had power to create the Court of Claims and make it a court of record, with the usual incidents of such courts.

　　[Ed. Note.—For other cases, see Courts, Dec. Dig. § 43.*]

2. COURTS (§ 42*)—CREATION—LEGISLATIVE POWER—"INFERIOR LOCAL COURT."

　　Laws 1897, c. 36, provided that the board of claims was thereby continued to be known as the Court of Claims, and that the commissioners

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

should be known as judges of the Court of Claims, defined its jurisdiction, and authorized it to establish rules of practice, vacate and modify judgments, and grant new trials as well as to appoint court officers and and adopt an official seal, and provided that its determination should be a judgment to be entered of record, and authorized appeals therefrom to the Appellate Division, and another provision (Code Civ. Proc. § 264) gave it jurisdiction to hear all private claims against the state, the purpose of the statute as shown by Code Civ. Proc. §§ 263–281, and Judiciary Law (Consol. Laws 1909, c. 30) § 2, being to have the proceedings and practice therein conform as near as possible to the highest courts of record. Const. art. 6, § 18, prohibits an inferior local court from being created as a court of record. *Held*, that the Legislature acted within its constitutional powers in creating the Court of Claims as a court of record; it not being an inferior local court within Const. art. 6, § 18.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 42.*

For other definitions, see Words and Phrases, vol. 4, p. 3582.]

3. COURTS (§ 43*)—ABOLITION—COURT OF CLAIMS—POWER OF LEGISLATURE.
   The Court of Claims being wholly a legislative tribunal, in the absence of constitutional restriction, the Legislature could abolish it.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 43.*]

4. COURTS (§ 41*)—ABOLITION—STATUTES.
   Laws 1911, c. 856, is entitled "An act to amend the Code of Civil Procedure in relation to restoring the board of claims with the power and jurisdiction of the Court of Claims, and providing for the appointment of the members of such board," and provides that the board of claims is thereby continued and shall thereafter be so known, and shall consist of three commissioners, one to succeed each of the three judges of the Court of Claims now serving, and that the statutes applicable to the Court of Claims shall apply to the board and govern its jurisdiction and procedure, except that its determination upon a claim shall be known as such and not as a judgment, but shall have the same effect as provided for a judgment, and that the commissioners appointed thereunder shall have power to determine all matters pending in the Court of Claims, and that the board of claims shall not be deemed a court of record. *Held*, that the statute abolished the Court of Claims, and established in its place with the same powers a board of claims.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 41.*]

5. STATUTES (§ 216*)—CONSTRUCTION—MOTIVE OF LEGISLATURE.
   In determining whether a statute abolished an existing court, the courts are not concerned with the ulterior motive of the Legislature in enacting the law, but only with its power to enact it.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 292; Dec. Dig. § 216.*]

6. JUDGES (§ 11*)—REMOVAL—JUDGES OF COURT OF CLAIMS—"OTHER JUDICIAL OFFICERS."
   Const. art. 6, enumerates various judicial officers, including judges of the Court of Appeals, justices of the Supreme Court, county judges, surrogates, and justices of the peace, and authorizes the election of district court justices and the establishment of inferior local courts, and section 11 authorizes the removal of judges of the Court of Appeals and Supreme Court justices by concurrent resolution of both legislative houses, and provides that "all other judicial officers except justices of the peace and judges or justices of inferior courts not of record may be removed by the Senate," on the Governor's recommendation, for cause and after hearing. *Held*, that the Court of Claims was not included within the words "all other judicial officers"; they referring to judicial officers expressly named in the Constitution or those which it authorized

the Legislature to create, so that the judges of that court could be removed summarily without hearing by the abolition of their offices.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 6, pp. 5070–5102; vol. 8, pp. 7741–7743.]

7. STATES (§ 184*)—AMENDMENT—MODE.

Const. art. 7, § 4, provides that, except the debts specified in sections 2 and 3, no debt shall be contracted by the state unless it be authorized by law for some single work, and no such law shall take effect until it has been submitted to the people, and has received a majority of the votes at a general election. Laws 1903, c. 147, provided for the issuing of bonds in a certain sum for the improvement of the Erie and other canals, and that the law should not take effect until submitted to the people at the general election and approved by a majority vote, and section 4 of the act provided that the Court of Claims should have jurisdiction to determine the amount of compensation for the lands, etc., appropriated for the work, and Laws 1909, c. 391, provided for the issuing of bonds upon the same terms, and incorporated therein by reference section 4 of the prior law. *Held*, that the statutes submitted to the voters no more than the question of the issuance of canal bonds, and a vote approving the law was not an amendment to the Constitution, and did not prevent the abolition, before the completion of the canals, of the Court of Claims so far as pending claims for appropriations of land, etc., for canal purposes were concerned.

[Ed. Note.—For other cases, see States, Dec. Dig. § 184.*]

8. STATUTES (§ 64*)—SUBMISSION OF STATUTE TO POPULAR VOTE—INCIDENTAL PROVISIONS.

The provision of the acts of 1903 and 1909, conferring powers on the Court of Claims, were not essential to the validity of the portion of the acts authorizing the creation of the debt.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66; Dec. Dig. § 64.*]

9. CONSTITUTIONAL LAW (§ 60*)—DELEGATION OF LEGISLATIVE POWERS.

The Legislature cannot, except in pursuance of a constitutional authorization delegate its power to the people.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 89, 90, 93; Dec. Dig. § 60.*]

10. CONSTITUTIONAL LAW (§ 5*)—AMENDMENT—MODE.

The Constitution can be amended only in the manner pointed out therein.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 2, 8; Dec. Dig. § 5.*]

Proceeding by the People of the State of New York, on the relation of Theodore H. Swift and others, against Robert L. Luce and others. Complaint dismissed. Affirmed in 132 N. Y. Supp. 1143.

Thomas Carmody, Atty. Gen., Morgan J. O'Brien, and Frank S. Black (L. Laflin Kellogg, of counsel), for plaintiffs.

Charles D. Donohue (D. Cady Herrick, of counsel), for defendants.

CHESTER, J. The Legislature at its last session passed an act (chapter 856 of the Laws of 1911) entitled:

"An act to amend the Code of Civil Procedure in relation to restoring the board of claims, with the powers and jurisdiction of the Court of Claims, and providing for the appointment of the members of such board."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Acting under the authority of that law, the Governor appointed the defendants as commissioners of claims. At the time of its passage, the relators were serving as judges of the Court of Claims, and they seek in this action to have it declared that said chapter 856 is unconstitutional and void; that the defendants are usurpers, and unlawfully holding and exercising the offices to which they were appointed; and that the relators are rightfully entitled to hold the offices of judges of the Court of Claims, and to have paid to them the salaries fixed by law for the judges of such court.

It is· unnecessary to review in detail the statutes that have been passed from time to time that have resulted in the creation of that court as it existed prior to the passage of the law referred to. It is sufficient to say that the Court of Claims, whatever its character as a judicial tribunal succeeded the board of claims, organized under chapter 205 of the Laws of 1883, which board had succeeded the board of audit, organized under chapter 444 of the Laws of 1876, which had, in turn, displaced the earlier board of canal appraisers.

The Court of Claims was organized under chapter 36 of the Laws of 1897. Under that act, it was provided that the board of claims was continued to be known thereafter as the Court of Claims, and that the commissioners of claims should thereafter be known and designated as judges of the Court of Claims. Its jurisdiction was defined, and the court was authorized to establish rules for its government and the regulation of the practice therein, to prescribe the forms and methods of procedure before it, to vacate and modify judgments, and to grant new trials. The court was authorized to appoint a clerk, deputy clerk, stenographer, and marshal, and to adopt an official seal. It was provided that the determination of the court upon a claim should be a judgment to be entered in a book kept by the clerk for that purpose, and appeals from its orders and judgments to the Appellate Division in the Third Department were authorized. The statute apparently aimed to have the proceedings and practice of the court and the tribunal itself conform as near as may be to the like features of the higher courts of record in the state. See Code of Civil Procedure, §§ 263 to 281, inclusive, and Judiciary Law (Consol. Laws 1909, c. 30) § 2. This condition existed from the time of the passage of the act of 1897 without substantial change down to the time of the passage of the act of this year.

It appears that there have been several attempts to make the Court of Claims a constitutional court. The constitutional convention of 1867 framed a provision providing for a Court of Claims, but the article upon being submitted to the people for adoption was rejected. 2 Lincoln's Constitutional History of New York, pp. 326, 402. A proposition in the constitutional commission of 1890 to establish a Court of Claims to consist of three judges was voted down in the commission. Id. p. 719. In the constitutional convention of 1894 a proposition was again offered to establish a Court of Claims, and that was rejected by the convention (1 Revised Record, Constitutional Convention, p. 436), so that there have been three failures to create a court

as a constitutional tribunal through the ordinary methods provided for the amendment of the fundamental law.

[1] The Legislature is supreme with respect to all legislative powers within constitutional limitations, and all legislative powers not prohibited may be exercised. In this respect it differs from Congress under the federal system because there only the powers specifically granted in the Constitution can be exercised, but here unless the prohibition is found in the state Constitution, the Legislature had the power to create a Court of Claims, and to provide for judges thereof, and to make it a court of record with the usual incidents of courts of that character. People ex rel. McLean v. Flagg, 46 N. Y. 401, 404; Koch v. Mayor, 152 N. Y. 72, 75, 46 N. E. 170; People ex rel. Hatch v. Reardon, 184 N. Y. 431, 434, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628. I can find nothing within the express terms of the Constitution or to be read therein by reasonable implication to interfere with the exercise of that power, unless it arises from the fact that, certain courts having been provided for under the doctrine of exclusion, the Legislature is prohibited from establishing any others. That doctrine clearly stands in the way of the creation by the Legislature of any courts of like character or having the jurisdiction and powers of those created or recognized by the Constitution; but the tribunal in question, if it was a court, was one entirely unlike any other under our system. Because of the constitutional prohibition of the Legislature auditing or allowing any private claim or account against the state (section 19 of article 113), a board of audit was created by the Legislature to pass upon such claims. The jurisdiction of the board of audit was thereafter conferred upon the board of claims, but each was possessed of very limited powers. The state cannot be sued by a private litigant except by its consent. Before the creation of the Court of Claims, the Legislature was annually besieged by claimants seeking the consent of the state to have their claims heard in the tribunal provided for that purpose. The Court of Claims was created with a much enlarged jurisdiction over either of the earlier tribunals. In addition to all the powers they possessed, it was given jurisdiction to hear all private claims against the state which shall have accrued within two years before the filing of such claims, and the state consented in the act creating the court with respect to all such claims to have its liability there determined. Code Civ. Proc. § 264. No private litigant could go into any of the courts provided for in the Constitution with any such claims, for the state had not given its assent that he might, and therefore this special tribunal, differing from all others, was provided for that purpose.

[2] In creating it as a court of record I think the Legislature was acting within its powers. Sill v. Village of Corning, 15 N. Y. 297; People ex rel. Townsend v. Porter, 90 N. Y. 68, 72.

The Constitution provides in article 6 for certain courts, and then in section 18 of that article states that:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature but no inferior local court hereafter created shall be a court of record."

. The Court of Claims created by the Legislature was neither an inferior court within the meaning of that term used in the Constitution for it was a court possessed of jurisdiction to determine private claims against the state, without limit as to the amount and deals with matters of great importance to the state and its citizens, nor was it a local court, for its jurisdiction was state wide in extent. While the question now being discussed has never been determined in the courts of the state, yet the Court of Claims created as it was has been recognized as a court of record of vast importance and wide jurisdiction in several cases in the Appellate Division and in the Court of Appeals. Spencer v. State, 187 N. Y. 484, 80 N. E. 375; Ostrander v. State, 192 N. Y. 415, 85 N. E. 668; Quayle v. State, 192 N. Y. 47, 84 N. E. 583; Remington v. State, 116 App. Div. 522, 101 N. Y. Supp. 952.

[3] I am not inclined, after the 14 years of the existence of this tribunal, with its character as a court of record unquestioned, and after it has been recognized as such by the higher courts of the state, to hold that the Legislature was without authority to create it as a court and as a court of record. It was, however, clearly a tribunal wholly of legislative creation. That being so, unless there is some constitutional limitation upon the power of the Legislature with respect to it, which I think there is not, it may deal with it as it sees fit so long as it cares to take the responsibility for its action. Long v. Mayor, etc., 81 N. Y. 427.

[4] The act of this year (chapter 856 of the Laws of 1911) provides that "the board of claims is continued and shall hereafter be so known," and provides that the board shall consist of three commissioners to be appointed by the Governor with the advice and consent of the Senate, one to succeed each of the three judges of the Court of Claims now serving. It also provides among other things that the provisions of law applicable to the Court of Claims, its jurisdiction and procedure, shall hereafter apply to said board, prescribe its jurisdiction and govern its procedure, except that the determination of the board upon a claim shall be known as a "determination," instead of a "judgment," but it shall have the same force and effect and be subjected to the same procedure as provided in the article for a judgment; that the commissioners appointed under the act shall have jurisdiction to hear and determine all matters pending in the Court of Claims at the time when the law takes effect; and that the board of claims shall not be deemed a court of record. Without expressly so stating, the law takes the form of a legislative abolishment of the Court of Claims and the establishment in its place of a board of claims. That, I think, under the conditions existing here, was within the legislative power. Koch v. Mayor, 152 N. Y. 79, 46 N. E. 170; Long v. Mayor, 81 N. Y. 427, 428; People ex rel. Mitchell v. Sturges, 156 N. Y. 580, 51 N. E. 295. The evident purpose of the Legislature in passing the law was not so much the creation of a new tribunal as it was the removal of the judges of the Court of Claims from their offices, in order to permit the commissioners of the board of claims to be selected from the party then in legislative control.

[5] The court, however, cannot be concerned in determining this

case with the purpose or the motive of the Legislature in passing the law, but only with its power in respect thereto.

It is hard to understand what was meant by the expression in the act of 1911 that the "board of claims is continued," for the act creating that board (Laws 1883, ch. 205) was expressly repealed by chapter 36, Laws of 1897, creating the Court of Claims. It is evident, however, from the entire act that the Legislature intended by it to create a board of claims to take the place and to be charged with the duties of the tribunal theretofore existing whether it was a court or a board.

[6]. On the theory that it was a court and that the members thereof were judicial officers, it is urged on behalf of the relators that the Legislature was without power to remove them from office because they were protected by the provisions of the Constitution with respect to the removal of such officers. The Constitution (article 6) enumerates various judicial officers, including judges of the Court of Appeals, justices of the Supreme Court, county judges, surrogates, and justices of the peace, authorizes the election of district court justices in the different cities of the state, and provides that inferior local courts of civil and criminal jurisdiction may be established by the Legislature. It also authorizes the removal of judges of the Court of Appeals and justices of the Supreme Court by concurrent resolution of both houses of the Legislature, and then provides (article 6, § 11) that "all other judicial officers, except justices of the peace and judges or justices of inferior courts not of record, may be removed by the Senate, on the recommendation of the Governor," but only for cause and after an opportunity to be heard.

It is conceded that no charges of any character were ever preferred against the relators as a cause for their removal from office. If the Legislature was acting within its lawful power, they were simply "legislated out of office" without charges and without an opportunity to be heard. They claim, however, that they were judicial officers, and to that extent I agree with them, but I do not think that they come within the meaning of the term, "all other judicial officers," in the clause of the Constitution mentioned, for the reason that that term refers, I think, to the judicial officers expressly named in the Constitution, with the exceptions therein stated, or which it in express terms authorized the Legislature to create. The fact that the last constitutional convention refused to make the Court of Claims a constitutional tribunal may be also mentioned as a further reason why the protection of the clause in question was not intended to be afforded to the judges of that court.

[7] The relators also insist that because of the approval by a popular vote of the people of the state pursuant to a constitutional requirement of the law authorizing the issue of bonds to build the barge canal, which law included a provision that claims for appropriations of "lands, structures and waters" shall be heard before the Court of Claims, such court cannot be abolished, so far as these claims are concerned, until the completion of the enlarged canals. It is conceded that at the time of the passage of the act of this year there were $20,000,000 of such claims pending before the court.

The Constitution in section 4 of article 7 provides that no debt of the character of the canal debt shall be contracted by or on behalf of the state unless authorized by law, and that—

"no such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election."

Chapter 147 of the Laws of 1903 provided for the issuing of bonds to the amount of $101,000,000 for the improvement of the Erie Canal, the Oswego Canal, and the Champlain Canal, and provided that the law shall not take effect until it shall have been submitted to the people at the general election to be held in November of that year, and until it had received a majority of all the votes cast for and against it at such election. Likewise chapter 391 of the Laws of 1909 provided for issuing bonds to an amount not to exceed $7,000,000 for the improvement of the Cayuga and Seneca Canals, and provided that it should not take effect until after the submission of the same to the people at the November election in that year, and not until it should have received a majority of all the votes cast for and against it at such election. Both acts were approved by the people on such submissions. The first of these acts contained a provision that "the Court of Claims shall have jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated" (section 4), and this provision was by a reference thereto in the last-named act relating to the Cayuga and Seneca Canals, made to apply thereto.

It appears clear that, under the constitutional provision last mentioned, the only matters authorized to be submitted to the vote of the people were the questions of the authorization of the debt for the work in question, providing for the collection of an annual tax to pay the interest on such debt as it falls due and to pay and discharge the principal of such debt within 15 years from the contract thereof. The provision of the law giving the Court of Claims jurisdiction to determine damages for property appropriated is not one of those required by the Constitution to be submitted to the people for approval, and could appropriately have been the subject of a separate act.

[8] While it was germane to the subject, it was not essential to the law authorizing the creation of the debt.

[9] The Legislature cannot, except in pursuance of a constitutional authorization, delegate its power to the people. Barto v. Himrod, 8 N. Y. 483, 59 Am. Dec. 506; People ex rel. Devery v. Coler, 173 N. Y. 103, 113, 65 N. E. 956.

[10] The approval by the people of an act not required by the fundamental law to be submitted to them cannot be construed to be an amendment of the Constitution, for that can be changed only by the methods provided for therein, nor can it be held to deprive the Legislature of its power to alter or amend the act at its pleasure. If this is a correct interpretation of the law, the Legislature was under no prohibition from making provision by law for sending claims for damages for "lands, structures and waters" appropriated for the canal enlargements to the board of claims which it might create, instead of to a Court of Claims, even though the former tribunal was given prac-

tically the same jurisdiction and powers as the latter. Several Legislatures have taken this view of the law for notwithstanding the submission of chapter 147 of the Laws of 1903 to the approval of the people and receiving their sanction that act has been subsequently amended or modified at least four times. Laws 1904, cc. 200, 335; Laws 1905, c. 740; Laws 1906, c. 265.

If I am correct in the views expressed, the Legislature was acting within its constitutional power in abolishing the Court of Claims, and creating a board of claims in its place. To say the least the act which did that is not so clearly unconstitutional, in view of what has been said to justify a court sitting at Special Term in so declaring.

The defendants' motion to dismiss must therefore be granted, and the complaint be dismissed, with costs.