JAMES I. MORRALL, as County Treasurer of the County of Monroe, Plaintiff, *v.* COUNTY OF MONROE and Others, Defendants.*

Fourth Department, February 13, 1936.

* See, also, *Keyes* v. *County of Monroe* (247 App. Div. 81).

*J. Emmett O'Brien*, for the plaintiff.

*Harry Rosenberg, Monroe County Legal Adviser* [*Adolph J. Roden-beck* of counsel], for the defendants.

CROSBY, J. This is a submitted controversy by which it is sought to have the question determined by declaratory judgment whether or not the plaintiff, James I. Morrall, is entitled to continue to exercise all the powers and perform all the duties of the office of county treasurer of Monroe county during the balance of the term for which he was elected.

It is unnecessary to repeat here all of the stipulated facts, but among them are the following:

" III. That on November 8, 1932, James I. Morrall was duly elected treasurer of the County of Monroe for the term ending October 6, 1936. That he duly qualified as such treasurer in October, 1933, and has since continued to act as such treasurer."

" VII. That at the general election in and for the County of Monroe, held on November 5, 1935, the County Manager form of government, as provided in Chapter 948 of the Laws of 1935, was duly adopted as the form of government for the County of Monroe. The plan of government adopted is referred to in the said law as Plan ' B,' and said law is also referred to as Article 2-A of the County Law of the State of New York, said law [form of government] to take effect on January 1, 1936."

" X. That the County of Monroe is a county of the first class, within the meaning of said Article 2-A."

" XII. That said Board of Supervisors did on or about January 2, 1936, appoint Clarence A. Smith, defendant, County Manager of the County of Monroe, for a term of four years.

" XIII. That since January 1, 1936, the Board of Supervisors have adopted, among others, the following resolutions: * * * Resolved that the County Manager be and hereby is directed to serve as County Manager and Director of Finance, for a term of four years," etc.

Then follow stipulations XIV, XV, XVI and XVII, which inform us, in substance, that the defendant Smith, as county manager and director of finance, has duly qualified for his office, has demanded that the plaintiff Morrall turn over to him the books, papers, records, moneys, etc., of the county; that the plaintiff has refused to comply

with the demand and that plaintiff and defendant "each now claim to be the proper official to perform the duties incident to the office of County Treasurer of the County of Monroe," and that the resulting confusion in county government demands a speedy determination of the claims of the respective parties.

Plan "B," adopted by the county of Monroe, provides for a county manager, and section 7-l of article 2-A of the County Law provides for three departments of county government: (1) A department of finance; (2) a department of public works, and (3) a department of public welfare (and an additional department of health at the option of the board of supervisors). Section 7-l (subd. 12) also provides that the county manager "shall in counties of the first class * * * appoint a director for each county department, except that he may, with the consent of the board of supervisors, act as the director of one or more departments himself," etc. And the XIIIth stipulation, above quoted, informs us that the board of supervisors has, by resolution, determined that defendant Smith " is directed to serve as County Manager and Director of Finance."

Section 7-b of the law in question provides that, if the plan for a manager form of government shall be adopted, " the form of government shall go into effect on the date designated in the petition or resolution, but no elective official then in office, whose office will no longer be filled by election, shall be retired prior to the expiration of his term of office, but during his unexpired term shall perform such duties as may be assigned to him by the county * * * manager."

The duties of the director of finance are set forth in section 7-p, and subdivision (4) of that section reads as follows:

" (4) To act as county treasurer and supervise collection of taxes. The director of finance shall act as county treasurer, but the board of supervisors may select and designate, by ordinance or resolution, banks or trust companies as official depositories for the funds of the county."

Attention should be called to the provisions of two other sections of article 2-A of the County Law. Section 7-g provides that the county manager " shall be the administrative head of the county government, shall have supervision over all of its departments, except as otherwise in this article provided," and section 7-e (4) reads as follows:

" (4) Whenever, in a county adopting a form of government pursuant to this article, it is not clear what officer shall exercise any power or perform any duty conferred upon or required of the county or an officer thereof, such power shall be exercised or duty performed by that officer of the county designated by the county * * * manager for the purpose."

In defining the duties of the county manager and of the director of finance it must be admitted that the list of duties as set forth in article 2-A does not specifically include all the duties which our statutes, in various places, have assigned to county treasurers. The list specifically includes many of them, and section 7-p does provide generally that the " director of finance shall act as county treasurer." What does that expression mean? Certainly not merely that he should act like a county treasurer, or act as if he were county treasurer. It must mean nothing less than that he should be clothed with the powers and charged with the duties of the office. If it means less than that it means nothing. The other quoted sections of the law reinforce this conclusion.

To be sure there can be found numerous provisions of law relating to county treasurers, scattered all through our statutes, which provisions have not been specifically repealed by article 2-A. And we are aware of the rule that repeal of statutes by implication is not favored. One claiming a repeal by implication has cast upon him the burden of showing that such repeal was clearly the legislative intent.

" But where a later statute, not purporting to amend a former one, covers the whole subject, and was plainly intended to furnish the only law upon the subject, the former statute must be held repealed by necessary implication." (*Heckmann* v. *Pinkney*, 81 N. Y. 211, 215.)

" It is well settled that where a later act covers the whole subject of earlier acts and embraces new provisions, and which act plainly shows that it was intended not only as a substitute for the earlier acts but to cover the whole subject then considered by the Legislature and to prescribe the only rules in respect thereto, it will operate as a repeal of all former statutes relating to such subject-matter even if such former acts are not in all respects repugnant to the new act." (*City of Buffalo* v. *Lewis*, 192 N. Y. 193.)

And here we have an entirely new form of county government, deliberately adopted, which, so far as the county's fiscal affairs are concerned, is so radically different from the old form of government that we are compelled to believe the Legislature never intended to leave the new form clothed with worn out garments of the past which are all out of style.

The Legislature was tender of the claimed rights of the plaintiff in continuing the office of county treasurer in any form or for any purpose. It was not obliged to do that, for the office of county treasurer is not a constitutional office, and indeed is not mentioned in our Constitution.

As was stated by the Board of Statutory Consolidation (Report of 1907, vol. 1, p. 634): "The county treasurers of the various counties are not constitutional officers and the office may be abolished by legislative enactment."

In the case of *Koch* v. *Mayor* (152 N. Y. 72) the office of police justice in New York city was abolished by the Legislature, and the court said: "Subject only to the restrictions of the Constitution, the Legislature may do what it thinks best with a public office or a public officer, by abolishing the office, shortening or lengthening the term thereof, increasing or diminishing the salary and the like." (See, also, *People ex rel. Mitchell* v. *Sturges*, 156 N. Y. 580; *Smith* v. *Mayor, etc., of New York*, 37 id. 518.)

The plaintiff would never think of complaining had the Legislature added new duties to his office or taken some of his duties away. That is all the Legislature has done here. Section 7-b continues him in office during the term for which he was elected and provides that he, "during his unexpired term shall perform such duties as may be assigned to him by the county * * * manager." To be sure some of the dignity of his office is gone and the office is merely a relic of the past, but the loss is merely the necessary sacrifice to what is thought to be progress.

The parties have stipulated that no question is raised as to the constitutionality of article 2-A of the County Law which became law May 16, 1935. We have, therefore, not considered the constitutionality of that article, even though there may be doubt of it. The parties are agreed in being mainly anxious for a speedy interpretation of the act, and, inasmuch as the constitutionality of the act is not before us, we are treating article 2-A of the County Law as a valid enactment. It follows that the constitutional amendments, effective January 1, 1936, relating to sections 1 and 2 of article 10 of the Constitution, can have no pertinence in this case, as both the amendment to the County Law and the adoption of the form of government therein provided for, by the county of Monroe, at the November election in 1935, occurred previous to the effectiveness of the amendment to the Constitution.

Determination of the matters set forth in the stipulation should be made favorably to the defendants, and, pursuant to the stipulation, no costs should be awarded.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Submitted controversy determined in favor of defendants, without costs.

Upon oral motion made after decision was rendered: Motion for leave to appeal to the Court of Appeals granted